CLARK, Justice.
We granted a writ of certiorari to determine whether a non-health care provider could be a joint tortfeasor with health care providers against whom a medical malpractice complaint had been filed, such that the suspension of prescription provisions of La. R.S. 40:1299.47(A)(2)(a) would apply to the filing of suit against the non-health care provider. Finding the clear language of the statute encompasses this circumstance, we reverse the lower courts’ rulings which granted and affirmed summary judgment on the issue of prescription in favor of the defendant. Accordingly, we reverse the decisions of both lower courts and remand this matter to the district court for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
This matter is before us for review of a motion for summary judgment. Consequently, the facts have not been fully developed. However, for the purpose of this review, the following facts are essentially undisputed. Thirty-four year old Daniel Milbert, a roofer, fell off a roof on September 2, 2008 and broke his right ankle. He sought treatment at Lafayette General Medical Center (“the hospital”), where, on September 4, 2008, Dr. Thomas Montgomery performed surgery to repair the ankle fracture. That same day, Dr. Todd Ackal placed in Mr. Milbert a pain pump.[1] On September 5, 2008, a Friday, Mr. Milbert *680 was discharged from the hospital to his home. He was instructed to call his doctor if he had any problems, difficulties or pain.
On Saturday, September 6, 2008, Mr. Milbert’s wife telephoned Dr. Montgomery to report her husband’s complaints of pain, impaired mobility and numbness. The call was automatically routed to a physician answering service, Answering Bureau, Inc. d/b/a Dexcomm (hereinafter “Dexcomm”). Dexcomm contacted the on-call surgeon, orthopedist Dr. Edward Scott Yerger, and gave him the message. According to the Milberts, Dr. Yerger reassured them Mr. Milbert’s reaction was to be expected, but instructed them to call back if Mr. Mil-bert’s pain worsened.
On Sunday, September 7, 2008, Mr. Mil-bert’s pain increased. At 3:21 p.m., Mrs. Milbert called Dexcomm, asking that Dr. Yerger be notified Mr. Milbert’s pain had become excruciating. When they failed to receive a return call from the on-call physician within a few minutes, the Milberts went to the hospital’s emergency room for treatment. The Milberts arrived at the emergency room at 4:16 p.m. in the afternoon. Although Mr. Milbert continued to suffer from severe pain in his right leg, no physician examined him for hours.
Dexcomm’s call log, attached as an exhibit to the motion and opposition and introduced at the hearing, indicates Dex-eomm employees initially paged the wrong doctor. Dr. Yerger was finally reached on his mobile phone at approximately 4.T4 p.m., about the time the Milberts arrived at the emergency room, and given the Milberts’ message. When Dr. Yerger asked Dexcomm to connect him to the Milberts, the call went to their voicemail. Dr. Yerger then informed Dexcomm’s employee to call him on his mobile phone if the Milberts called again.
While awaiting examination in the emergency room, the Milberts continued to call Dexcomm, leaving messages for Dr. Yer-ger. During one of those calls, a Dex-comm employee allegedly informed the Milberts nothing could be done for them according to office policy because they were already in the emergency room. The Milberts did not receive a return telephone call from the on-call physician. In spite of Dr. Yerger’s directive to a Dexcomm employee, he was not informed of the Mil-berts’ subsequent phone calls.
Several hours after their arrival at the hospital, an emergency room physician examined Mr. Milbert. Dr. Yerger was immediately called by the emergency room physician to come to the hospital. Within twenty-three minutes, Dr. Yerger arrived at the hospital, examined Mr. Milbert, diagnosed his complaint as compartment syndrome of his right leg, alerted the surgical team to prepare for emergency surgery, and recorded his findings.[2] After arriving at the hospital at 4:16 p.m., Mr. Milbert underwent emergency surgery at 10:22 p.m. In addition to undergoing this emergency surgery, Mr. Milbert was required to undergo numerous surgical de-bridement procedures of his entire lower right leg because of extensive tissue damage. His wounds remained open for several months and he was subsequently required to undergo numerous skin grafting procedures.
Consistent with the provisions of the Medical Malpractice Act (“MMA”), La. R.S. 40:1299.41 et seq., the Milberts filed a timely request for a medical review panel on August 28, 2009, to consider their medical malpractice complaint against Dr. Ack *681 al, Dr. Yerger, the hospital and the two hospital emergency room physicians. Among other specific allegations of medical malpractice, the Milberts averred the damage suffered by Mr. Milbert could have been prevented had the health care providers “performed an appropriate work-up and diagnostic tests, had they properly monitored and had they promptly and appropriately managed, treated and cared for” him.[3]
The request for a medical review panel was amended on November 20, 2009 to add Dexcomm. During discovery of their claim against the health care providers, the Milberts learned Dr. Yerger gave specific instructions to the answering service that he be contacted if the Milberts called back on September 7, 2008. The Milberts also learned the personnel for the medical answering service failed to convey their subsequent messages to Dr. Yerger. The Milberts discovered there was no policy at Dexcomm for personnel to cease trying to contact the treating or on-call physician for a recent surgical patient who was on his way to the emergency room. This information formed the basis of the amendment to the medical review complaint which added Dexcomm. On December 7, 2009, the Louisiana Patient’s Compensation Fund notified the Milberts through their attorney that Dexcomm was not a qualified health care provider under the MMA. Thereafter, on December 23, 2009, the Mil-berts filed suit against Dexcomm in the district court.
On September 14, 2011, the medical review panel rendered a decision in favor of the health care providers.[4] On December 14, 2011, the Milberts filed a timely medical malpractice lawsuit against the hospital, the two emergency room physicians, and Louisiana Emergency Physicians. Thereafter, the Milberts filed a motion to consolidate the two lawsuits.
Dexcomm filed a motion for summary judgment, asserting the Milberts’ claims against it were based on general negligence which occurred on September 7, 2008. Dexcomm argued the lawsuit filed on December 23, 2009 was prescribed on its face, as the petition was filed after expiration of the one year prescriptive period applicable to a negligence action. The Milberts opposed the motion, claiming Dexcomm was a joint tortfeasor with the health care providers against whom the Milberts had filed a medical malpractice complaint. The Milberts argued their suit against Dexcomm was filed during the time prescription was suspended against all joint tortfeasors under La. R.S. 40:1299.47(A)(2)(a), particularly the section emphasized below:
(2)(a) The filing of the request for a review of a [medical malpractice] claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board[5] that the health care provider *682 is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary ob-ligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review. Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription. All requests for review of a malpractice claim identifying additional health care providers shall also be filed with the division of administration.
In addition, the Milberts asserted then-negligence claim was timely filed within one year of discovery of an alleged action against Dexcomm, relying upon the doctrine of contra non valentem which prevents the running of liberative prescription under certain circumstances.[6] The Mil-berts claimed they were unaware of then-cause of action against Dexcomm until sometime in November 2009.
After a hearing on February 22, 2012, the district judge granted Dexcomm’s motion for summary judgment and certified the ruling as a final judgment. In oral reasons for judgment, the district judge found the Milberts’ claim against Dex-comm had prescribed, “whether they are joint and several or not.” The district judge did not find the general negligence allegedly committed by Dexcomm to be *683 similar to medical malpractice such that provisions of the MMA should apply. In finding no merit to the Milberts’ argument based on contra non valentón, the judge found the Milberts were aware of Dex-comm’s failure to forward the phone messages on the day that failure occurred, September 7, 2008. Thereafter, the Mil-berts appealed.
The appellate court affirmed the district court’s ruling in a 2-1 decision.[7] The majority opinion agreed with the district court that the MMA’s provisions for suspension of prescription did not apply in this case. The appellate majority concluded Dexcomm was not a health care provider, a joint or solidary obligor with a health care provider, or a joint tortfeasor with a health care provider. The majority opinion also rejected the Milberts’ argument based on contra non valentón for the reasons given by the district court.
One of the judges in the majority opinion separately concurred, finding the majority’s opinion was too restrictive as to potential joint tortfeasors under La. R.S. 40:1299.47(A)(2)(a). The concurrence found prescription could be suspended against a joint tortfeasor, even if that joint tortfeasor was a non-health care provider, as long as the claim sounded in medical malpractice.
The dissenting judge agreed with the concurrence that the clear terms of the statute would allow a non-health care provider to be a joint tortfeasor with a health care provider. However, the dissent disagreed with the concurring judge’s requirement that the non-health care provider joint tortfeasor’s negligence be based in medical malpractice in order for La. R.S. 40:1299.47(A)(2)(a) to apply. Instead, the dissent characterized the critical inquiry as:
[ Wjhether the answering service’s negligence in failing to call and alert Dr. Yerger combined with the healthcare providers’ negligence in causing Plaintiffs’ damages, which allegedly resulted from a delay in assessment and treatment of his ongoing condition. If so, they are jointly and divisibly liable. This is a question of fact that does not turn on Dexcomm’s status as non-healthcare providers [sic] or whether its negligence sound[s] in medical malpractice or ordinary negligence.[8]
We granted the Milberts’ writ application to review these issues.[9]
LAW AND DISCUSSION

Standard of Review

Summary judgment was granted in favor of Dexcomm in the district court, which was affirmed on appeal. In Smitko v. Gulf South Shrimp, Inc., 2011-2566, p. 7 (La.7/2/12); 94 So.3d 750, 755, we stated “[a]ppellate review of the granting of a motion for summary judgment is de novo, using the identical criteria that govern the trial court’s consideration of whether summary judgment is appropriate.” A motion for summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966; Smitko, supra.
The motion for summary judgment asserted the petition filed in this case was *684 prescribed. Prescription is often raised by exception and, like the movant in a summary judgment, the exceptor bears the burden of proof at the trial of the peremptory exception. La. C.C.P. arts. 927 and 966(C)(2); Wells v. Zadeck, 2011-1232, p. 7 (La.3/30/12); 89 So.3d 1145, 1149. Ordinarily, Dexcomm, as movant, would bear the burden of proof at trial of this issue. “However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed.” Id. Here, the Milberts had the burden to show their petition was not prescribed.
When summary judgment is granted in the context of statutory interpretation, there are no material issues of fact in dispute and the sole issue before us is a question of law as to the correct interpretation of the statute at issue. Vizzi v. Lafayette City-Parish Consol. Government, 2011-2648, p. 2 (La.7/2/12); 93 So.3d 1260, 1262. Legislation is the solemn expression of the will of the legislature. La. C.C. art. 2; First Nat. Bank, USA v. DDS Const., 2011-1418, p. 12 (La.1/24/12); 91 So.3d 944, 953. The determination of the legislature’s will must start with the language of the statute itself. McGlothlin v. Christus St. Patrick Hosp., 2010-2775, p. 11 (La.7/1/11); 65 So.3d 1218, 1227. The words used must be interpreted as they are generally understood. La. C.C. art. 11; McGlothlin, 2010-2775, p. 11; 65 So.3d at 1228. When the words of a statute are clear and unambiguous, and the application of the law does not lead to absurd consequences, the statute should be applied as written and no further effort should be made to determine the legislature’s intent. La. C.C. art. 9; La. R.S. 1:4; In re: Succession of Faget, 2010-0188, p. 8-9 (La.11/30/10); 53 So.3d 414, 420. Accordingly, we are bound to a strict interpretation of the plain language of the statutory provisions which are before us.

Analysis

A lawsuit asserting general negligence must be filed within one year from the day injury or damage is sustained. La. C.C. art. 3492. According to the Milberts’ petition, Dexcomm’s actions that gave rise to Mr. Milbert’s injuries occurred on September 7, 2008. The suit was filed in district court on December 23, 2009. On its face, the petition revealed that prescription had run unless the time limitation for filing suit was suspended or interrupted, and it was the Milberts’ burden to demonstrate why their claims had not prescribed. The Mil-berts contend Dexcomm is a joint tortfea-sor with health care providers against whom they filed a medical malpractice complaint. They seek the benefit of a provision of the MMA which suspends the running of the time limitations for filing suit against joint tortfeasors during the time a medical review panel considers a medical malpractice complaint.
La. R.S. 9:5628 provides that all actions against certain health care providers arising out of patient care must be filed within one year from the date of the alleged act or within one year from the date of the discovery of the act. In all events, such claims must be filed at the latest within three years from the date of the alleged act. Before a medical malpractice suit can be filed, the claimant must file a complaint seeking review of the complaint by a medical review panel. La. R.S. 40:1299.47(B)(l)(a)(i).
The MMA provides for the limitation of recovery for acts of medical malpractice performed by those health care providers who have qualified under the Act. See La. R.S. 40:1299.42. Even a health care provider who has not qualified under the Act, and so is not covered by its limitation of *685 recovery provisions, is still covered by the provisions with respect to the suspension and running of prescription of actions against a health care provider against whom a request for a panel review has been filed. La. R.S. 40:1299.41(0). Under the MMA, La. R.S. 40:1299.47(A)(2)(a) provides for the suspension of time within which suit must be instituted for joint and solidary obligors, and all joint tortfeasors, including qualified and not qualified health care providers during the pendency of a timely filed medical review panel complaint.
Dexcomm contends the reference in the statute to “all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified” should be interpreted to suspend the running of prescription only against joint tortfeasors who are also health care providers. Dexcomm argues the phrase “both qualified and not qualified” injects a limitation on “all joint and solidary obligors, and all joint tortfea-sors.” We find this interpretation of the statutory provision to be untenable.
The words and phrases used in legislation must be interpreted as they are generally understood, unless they contain words of art or technical language. La. C.C. art. 11; Rando v. Anco Insulations, Inc., 2008-1163, p. 8 (La.5/22/09); 16 So.3d 1065, 1075. Here, the phrase “both qualified and not qualified” obviously modifies the term “health eare providers” which immediately precedes it. Rather than using limiting language, the legislature used expansive language to provide that the joint and solidary obligors, and all joint tortfeasors, for whom prescription is suspended includes but is not limited to these two types of health care providers, i.e. both health care providers who have qualified and who have not qualified under the MMA. By using this expansive language, the legislature clearly means the two types of health care providers are a part or subset of a larger set or group (in this case, the group consisting of obligors and tortfeasors), and that this larger group of obligors and tortfeasors may also include entities other than health care providers. There is no limitation or restriction in the legislation as to who may be a joint tortfeasor. We will not read into the statute a limitation which does not exist. Nothing in the language of the statute prohibits a non-health care provider from being a joint tortfeasor with a health care provider under an appropriate fact situation.
We find this interpretation to be correct considering the context in which the relied-upon language is found. The first sentence in La. R.S. 40:1299.47(A)(2)(a) discusses the length of time prescription is suspended when a medical malpractice complaint is filed against health care providers seeking a determination from a medical review panel. The medical review panel initially decides whether the health care provider is qualified or not qualified under the MMA. Against a qualified health care provider, the filing of the request for review of a claim with a medical review panel suspends the time within which suit must be instituted until ninety days following notification of the opinion by the medical review panel. Against a health care provider who is not qualified under the MMA, the filing of the request for review of a claim with the medical review panel suspends the time within which suit must be instituted until ninety days following notification the health care provider is not covered by the MMA’s provisions.
The second sentence of La. R.S. 40:1299.47(A)(2)(a), relied upon by the Mil-berts, gives guidance in the situation where there are claims against multiple *686 tortfeasors, for which there may be different time limitations for filing suit. Where suit is filed against alleged joint and soli-dary obligors, or joint tortfeasors, the legislature indicates its preference in this second sentence for the same time limitation to be applied to all of the defendants. In that situation, the legislature provides that the filing of a request for review of a malpractice claim against the health care provider, qualified or not qualified, shall suspend the running of prescription for filing suit “to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.” This legislation produces the imminently practical result that allegations of joint or concurrent negligence may be determined at the same time.
We find the legislative intent in this provision to be clear, express and unambiguous, and the statute should be applied as written. If a non-health care provider is a joint tortfeasor with a health care provider, the rules which suspend the running of prescription against the health care provider, qualified or not qualified, will be applied to the non-health care provider.
Dexcomm argues our interpretation of the statute conflicts with our holdings in LeBreton v. Rabito, 97-2221 (La.7/8/98); 714 So.2d 1226 and Borel v. Young, 2007-0419 (La.11/27/07); 989 So.2d 42 (on rehearing). We disagree.
LeBreton addressed the effect of filing a medical malpractice lawsuit in district court before submitting the claim to a medical review panel, as required by La. R.S. 40:1299.47(B)(1)(a)(i). Before LeBreton, litigants who failed to first submit their medical malpractice claims to a panel were using the suspension of prescription provisions of the MMA in conjunction with the civil code articles on interruption of prescription to extend the time in which a claimant could file a medical malpractice lawsuit. In LeBreton, we recognized the legislature equitably provided for the suspension of prescription during the pen-dency of the panel review process because the legislature required a litigant to submit a medical malpractice complaint to the panel review process before suit was filed. We held medical malpractice claims are governed by the specific provisions of the MMA regarding the suspension of prescription, and not the general codal articles on the interruption of prescription. Le-Breton is not impacted by the instant case. The Milberts do not seek the benefits of both the suspension of prescription provisions of the MMA and the interruption of prescription under the codal articles. Instead, the Milberts argue the suspension of prescription provisions apply to their lawsuit against Dexcomm, alleged to be a joint tortfeasor with health care providers.
In Borel, the court answered the question whether the three year period in La. R.S. 9:5628, which provides time limitations for filing medical malpractice lawsuits, was prescriptive or preemptive. In reaffirming Hebert v. Doctors Memorial Hosp., 486 So.2d 717 (La.1986), we held “that both the one-year and three-year periods set forth in LSA-R.S. 9:5628 are prescriptive, with the qualification that the contra non valentem type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect.” Borel, 2007-0419, p. 29; 989 So.2d at 69. In Borel, we also extended the rule of LeBreton, finding “the more specific provisions of the Medical Malpractice Act regarding suspension of prescription against joint tortfeasors apply to the exclusion of the general code article on interruption of prescription against joint tort-feasors, LSA-C.C. art. 2324(C).” Id. Our holding in the instant case is supported by *687 Borel. The specific provisions of the MMA with regard to the suspension of prescription are being applied to a defendant who is alleged to be a joint tortfeasor with a health care provider made the subject of a medical malpractice complaint.
Dexcomm also contends our interpretation of the statute impermissibly enlarges the time constraints on suing tortfeasors, as plaintiffs in some circumstances will have a longer time to file suit against a non-health care provider than might ordinarily occur. The fact that the time period for filing suit may be extended beyond the one year prescriptive period for negligence actions against a joint tortfeasor, or a joint or solidary obligor, is a direct result of the language and clear legislative intent of La. R.S. 40:1299.47(A)(2)(a). As such, these arguments are more appropriately addressed to the legislature.
Applying our holding to the facts here, we find the Milberts alleged negligent action by Dexcomm which occurred on September 7, 2008. The petition avers all of the injuries sustained by the Milberts were a result of the combined joint and several negligence of Dexcomm and the health care providers against whom a medical malpractice complaint was pending. The record shows the Milberts filed a timely medical malpractice complaint under the provisions of the MMA against the health care providers on August 28, 2009. The medical review panel rendered its decision on September 14, 2011, almost two years later. The Milberts’ suit against Dex-comm, alleged to be a joint tortfeasor with the health care providers made the subject of the medical review panel, was filed on December 23, 2009, well before the panel rendered its decision and well before the expiration of the time period for filing suit after the panel’s decision was rendered. See Guitreau v. Kucharchuk, 1999-2570 (La.5/16/00); 763 So.2d 575.[10] Since we find the suit against Dexcomm was timely filed by the Milberts by operation of the suspension of prescription provisions of the MMA, we need not reach their argument regarding timeliness under the doctrine of contra non valentem.
Finding the petition was timely filed does not end Dexcomm’s legal challenge to the Milberts’ petition. Even if we found La. R.S. 40:1299.47(A)(2)(a) applicable here, Dexcomm argued it could not be a joint tortfeasor with the health care providers as a matter of law. Dexcomm contends it did not owe the same performance to the Milberts as did the health care providers. Dexcomm asserts the duties owed by a health care professional to a patient and the duties Dexcomm owed to callers as an answering service are too disparate for their independent breach to result in injury caused by joint tortfeasors. Dexcomm explains any duty it owed to the Milberts did not encompass the risk of medical malpractice committed before and after its alleged negligent action.
Louisiana courts resolve most negligence cases by employing a duty/risk analysis, under which a plaintiff must prove five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard of care; (2) whether the defendant’s conduct failed to conform to the appropriate standard of *688 care; (3) whether the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries; (4) whether the defendant’s substandard conduct was a legal cause of the plaintiffs injuries; and (5) whether the plaintiff was damaged. S.J. v. Lafayette Parish School Board, 2009-2195, p. 8 (La.7/6/10); 41 So.3d 1119, 1125; Brewer v. J.B. Hunt Transport, Inc., 2009-1408, p. 14 (La.3/16/10); 35 So.3d 230, 240; Hanks v. Entergy Corp., 2006-477, p. 20-21 (La.12/18/06); 944 So.2d 564, 579. “The threshold issue in any negligence action is whether the defendant owed the plaintiff a duty, and whether a duty is owed is a question of law.” Hanks, 2006-477, p. 21; 944 So.2d 564.
Dexcomm had a duty to act as a reasonable physician answering service.[11] At a minimum, we believe Dexcomm’s duty to act as a reasonable answering service included accurately obtaining and recording the messages from its clients’ patients, some of whom may have recently undergone surgery, and accurately and promptly communicating such messages to the appropriate treating physician or physician on-call. We do not find it unreasonable to expect that a physician answering service’s duties would include the risk that a delay or inaccuracy in conveying a message from one of its clients’ patients could result in a medical emergency or the worsening of a patient’s medical condition. The alleged negligence of Dexcomm necessarily included the foreseeable risk that its failure to contact an on-call doctor for an emergency situation could encompass subsequent negligent delay in his treatment by the hospital’s nurses and emergency room physicians.
“A joint tortfeasor is one whose conduct (whether intentional or negligent) combines with the conduct of another so as to cause injury to a third party.” Greer v. Johnson, 37,655 p. 5 (La.App. 2 Cir. 9/24/03); 855 So.2d 898, 901. The term “joint tortfeasor” may be applied both to the situation where two or more persons are acting together in concert, or where “[t]he negligence of concurrent tortfeasors ... occurs or coalesces contemporaneously,” to produce an injury.[12] When joint tortfeasors conspire to commit an intentional or willful act, they are solidarily liable for the damage they cause.[13] If liability is not solidary for damages caused by joint tortfeasors because the actions are not intentional or willful, then liability for *689 damages caused by two or more persons is a joint and divisible obligation.[14] Under Louisiana’s pure comparative fault system, “the fault of every person responsible for a plaintiffs injuries [must] be compared, whether or not they are parties, regardless of the legal theory of liability asserted against each person.” Dumas v. State ex rel. Dept. of Culture, Recreation & Tourism, 2002-0563, p. 11 (La.10/15/02); 828 So.2d 530, 537; see La. C.C. art. 2323.[15]
In their opposition to Dexcomm’s motion for summary judgment, the Mil-berts asserted Mr. Milbert suffered one indivisible injury on September 7, 2008, when his pain and symptoms from acute compartment syndrome, an emergency surgical condition, went undiagnosed and untreated from 3:21 p.m., the time of the Milberts’ first call to Dexcomm, until 10:22 p.m., the time emergency surgery was started. This harm allegedly resulted from the actions or failure to act by multiple tortfeasors.
The Milberts assert Dexcomm employees failed to promptly and accurately forward their requests for emergency care and assistance to the on-call physician, even after the on-call physician instructed them to do so. The Milberts contend the hospital, through its nursing staff, failed to appropriately and promptly triage Mr. Milbert’s condition as a surgical emergency that required immediate attention. The Milberts assert the emergency room doctors at the hospital failed to timely and accurately evaluate Mr. Milbert’s condition. The Milberts claim Dr. Yerger failed to promptly contact the Milberts to advise them to immediately proceed to the emergency room and that he would meet them there.[16]
Our review of the pleadings and argument shows the basis of the Milberts’ claim of injury is primarily the delay in the proper assessment and treatment of Mr. Milbert’s medical condition. Dexcomm’s asserted negligence is alleged to have contributed to this delay. More particularly, Dexcomm’s failure to promptly convey the Milberts’ messages to Dr. Yerger is alleged to have occurred contemporaneously and in combination with the negligence of *690 the hospital, emergency room physicians and Dr. Yerger to cause Mr. Milbert’s injury. Under the factual circumstances of this case, we find the Milberts are not precluded, as a matter of law, from asserting Dexcomm is a joint tortfeasor with the health care providers.[17] The final determination whether the Milberts have proved their claim must be made by the finder of fact at trial.
CONCLUSION
We find a non-health care provider may be a joint tortfeasor with a health care provider against whom a medical malpractice complaint has been filed, such that the suspension of the time limitations for filing suit under La. R.S. 40:1299.47(A)(2)(a) may apply to the filing of suit against the non-health care provider. Applying La. R.S. 40:1299.47(A)(2)(a) to the facts of this case, we hold the petition was filed timely. Under the asserted facts of this case, we further find the plaintiffs are not precluded as a matter of law from asserting the defendant is a joint tortfeasor with health care providers against whom a medical malpractice claim was filed. We therefore reverse the summary judgment granted to the defendant in the district court and affirmed by the court of appeal. We remand this matter to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED

. A "pain pump” was explained in the petition to be a "peripheral catheter with an infusion pump to provide a continuous nerve block” which was “designed to administer analgesic for pain relief.” R., Vol. 1, p. 2.

. Compartment syndrome is described in the petition as severe vascular compromise. Deposition testimony attached as exhibits to the opposition to summary judgment describe this as a serious emergency complication which requires immediate surgery.

. R., Vol. 1, p. 81 (emphasis added).

. The Milberts claim they received notification of the decision of the medical review panel on September 16, 2011.

.The term "board,” in the context of the MMA, means the Patient’s Compensation Fund Oversight Board. See La. R.S. 40:1299.41(3).

. In Wells v. Zadeck, 2011-1232, p. 8-9 (La.3/30/12); 89 So.3d 1145, 1150, we discussed the doctrine of contra non valentem and the situations in which the doctrine might apply:
Although LSA-C.C. art. 3467 provides that "prescription runs against all persons unless exception is established by legislation,” Louisiana jurisprudence has long recognized the doctrine of contra non valen-tem as a means of suspending the running of prescription when the circumstances of a case fall within one of four categories. See Frank L. Maraist and Thomas C. Galligan, Louisiana Tort Law § 10 — 4(b), 222 (1996). Contra non valentem non currit praescriptio means that prescription does not run against a person who could not bring his suit. Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 354 (La.1992); see also, Cartwright v. Chrysler Corp., 255 La. 597, 232 So.2d 285, 287 (1970). This Court has recognized that the doctrine of contra non va-lentem is used to soften the occasional harshness of prescriptive statutes. Carter v. Haygood, 04-646 (La.1/19/05), 892 So.2d 1261, 1268.
In Plaquemines Parish Commission Council v. Delta Development Company, Inc., 502 So.2d 1034, 1056 (La.1987), this Court held that "[tjhere is no question but that contra non valentem continues to be a viable exception to the running of liberative prescription in Louisiana.” This Court recognized the four instances where contra non valentem can be applied to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff’s action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant. These categories allow "the courts to weigh the ‘equitable nature of the circumstances in each individual case' to determine whether prescription will be tolled." Id. at 1054, 1055.
In this case, the Milberts based their alternative argument to the motion for summary judgment on the fourth type of situation in which contra non valentem may apply, i.e. where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

. Milbert v. Answering Bureau, Inc., 2012-632 (La.App. 3 Cir. 12/5/12); 103 So.3d 1285.

. Id., 2012-0632, p. 3; 103 So.3d at 1288-1289 (Cooks, J. dissenting).

. Milbert v. Answering Bureau, Inc., 2013-0022 (La.3/1/13); 108 So.3d 781.

. Guitreau held that when the 90 day period of suspension after the decision of the medical review panel is completed, plaintiffs in medical malpractice actions are entitled to the period of time under La. R.S. 9:5628 that remains unused at the time the request for a medical review panel is filed. Id., 1999-2570, p. 6; 763 So.2d at 579. The Milberts likewise had one year to file suit under La. C.C. art. 3492. Under the reasoning of Guitreau, the Milberts had 90 days after receipt of the opinion of the medical review panel plus the time remaining in the one year prescriptive period (here, 10 days) to file suit.

. Deposition testimony attached as an exhibit to the Milberts' opposition indicates Dex-comm is an answering service for all types of businesses, and not only for medical or health care related businesses. However, in its motion for summary judgment, Dexcomm identified itself as "a physician answering service.” R„ Vol. l,p. 27, ¶ 7.

. See Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 12.04 (2004 ed.), p. 12-6. Although decided well before our present system of comparative fault, Russo v. Aucoin, 7 So.2d 744 (La.App. 1 Cir.1942) provides a useful discussion about joint tort-feasors: "The proximate cause of an accident may be the negligence of one person or it may be the negligence of several people. If it is the negligence of several people, that negligence may be their joint negligence, that is, negligence in which they participate jointly, acting together, or it may be separate negligence by each of them which, combining together, produces the unfortunate result: the accident.”

.La. C.C. art. 2324(A) provides: "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.” La. C.C. art. 1794 provides: "An obligation is solidary for the obli-gors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee.” As the petition does not allege Dexcomm is solidarily liable with the health care providers, we need not address Dexcomm’s argument regarding solidarity.

.La. C.C. art. 2324(B) provides: "If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person’s insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23:1032, or that the other person’s identify is not known or reasonably ascertainable.” La. C.C. art. 1788 provides in pertinent part: “When different obligors owe together just one performance to one obligee, but neither is bound for the whole, the obligation is joint for the obligors.” La. C.C. art. 1789 provides in pertinent part: "When a joint obligation is divisible, each joint obligor is bound to perform, and each joint obligee is entitled to receive, only his portion.”

. La. C.C. art. 2323(A) and (B) provide, in pertinent part: "In any action for damages ... the degree or percentage of fault of all persons causing or contributing to the injury, death or loss shall be determined, regardless of whether the person is a party to the action or a nonparty.... The [foregoing] provisions ... shall apply to any claim for recovery of damages for injury, death or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.”

. The Milberts' claim against the remaining joint tortfeasor, Dr. Ackal, is based on his placement of the pain pump on September 4, 2008. In their brief, the Milberts deny alleging any negligence on the part of Dexcomm for anything which occurred before Mr. Mil-bert’s discharge from the hospital on Friday, September 5, 2008.

. As Dexcomm raises only legal arguments to the Milberts’ claim, we do not address factual issues.