# STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2019 CA 1463

## WILLIAM COOK & RENEE SOILEAU

### VERSUS

## CARL SWAYZE RIGBY, M.D. & LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY

Judgment Rendered: APR 1 3 2021

\* \* \* \* \* \*

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana

Docket No. C633382

Honorable William A. Morvant, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Michael C. Palmintier<br>Baton Rouge, Louisiana | Counsel for Plaintiffs/Appellants<br>William Cook & Renee Soileau |
| Hebert J. Mang, Jr.<br>Tara S. Bourgeois<br>Carey M. Nichols<br>Nancy B. Roberts<br>Jonathan Thomas<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees<br>Carl Swayze Rigby, M.D. &<br>Louisiana Medical Mutual Insurance<br>Company |
| Douglas K. Williams<br>Chris D. Billings<br>Kelsey A. Clark<br>Katherine D. Cook<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Our Lady of the Lake Hospital, Inc. |
| Vance A. Gibbs<br>Randal R. Cangelosi<br>Jason R. Cashio<br>Baton Rouge, Louisiana | Counsel for Defendants/Appellees<br>Matthew A. Stair, M.D., Michael L.<br>Bruce, M.D., David W. Walker, M.D.,<br>Radiology Associates, LLC & Louisiana<br>Medical Mutual Insurance Company |

\* \* \* \* \* \*

BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.

**McCLENDON, J.**

The plaintiffs appeal a trial court judgment in favor of the defendant hospital, sustaining its peremptory exception raising the objection of prescription and dismissing the plaintiffs' claims against it with prejudice. For reasons that follow, we affirm the judgment of the trial court.

## BACKGROUND

On July 20, 2012, William Cook underwent a mitral valve repair surgery performed by Dr. Carl Swayze Rigby. In January of 2013, Mr. Cook's cardiologist discovered a retractor bolt in Mr. Cook's pericardium, which purportedly had fallen from the Cosgrove Valve Retractor System used during the 2012 surgical procedure. On July 19, 2013, Cook and his wife, Renee Soileau, filed a complaint against Dr. Rigby with the Patient's Compensation Fund (PCF) to establish a medical review panel in accordance with the provisions of the Louisiana Medical Malpractice Act (LMMA). However, after a panel chairman was not appointed within one year pursuant to LSA-R.S. 40:1299.47 (currently LSA-R.S. 40:1231.8), the claim was dismissed.[1] Thereafter, on September 9, 2014, the plaintiffs filed the instant medical malpractice suit against Dr. Rigby and his insurer, Louisiana Medical Mutual Insurance Company (LAMMICO).[2]

On July 13, 2018, the plaintiffs filed an amended and supplemental petition naming Kapp Surgical Instrument, Inc. (Kapp), Our Lady of the Lake Hospital, Inc. (OLOL), Radiology Associates, LLC (Radiology Associates), Matthew Allen Stair, M.D., Michael Lynn Bruce, M.D., David Wyman Walker, M.D., and their insurer, LAMMICO, as defendants.[3] Kapp and OLOL were added as defendants based on allegations that the retractor bolt was manufactured by Kapp and owned and maintained by OLOL. The allegations against Drs. Stair, Bruce, and Walker and Radiology Associates (the

---

[1] Pursuant to House Concurrent Resolution No. 84 of the 2015 Regular Session, Title 40 was recodified in its entirety and the LMMA, formerly cited as LSA-R.S. 40:1299.41, *et seq.*, was redesignated as LSA-R.S. 40:1231.1, *et seq.* In particular, LSA-R.S. 40:1299.47 was redesignated as LSA-R.S. 40:1231.8. For ease of reference, all citations hereinafter are to the current statutory designation. See **Kirt v. Metzinger,** 19-1162 (La. 4/3/20), —— So.3d ——, —— n.3.

[2] The plaintiffs also asserted constitutional challenges to the LMMA. The parties subsequently agreed to bifurcate the plaintiffs' claims that the LMMA was unconstitutional from the plaintiffs' claims of medical malpractice.

[3] The plaintiffs also filed a request for a medical review panel as to these defendants on July 13, 2018.

2

radiology defendants) were based on their negligent interpretation of radiological images.

Subsequently, OLOL, as well as the radiology defendants, filed dilatory exceptions raising the objection of prematurity. With regard to its objection of prematurity, OLOL asserted that the plaintiffs' claims against it fell within the ambit of the LMMA and, therefore, had to be submitted to a medical review panel. On January 31, 2019, following a hearing, the trial court sustained the exceptions of prematurity and stayed the proceeding as to the newly added defendants pending completion of the medical review panel.

Thereafter, on May 31, 2019, OLOL filed a peremptory exception raising the objection of prescription, asserting that Mr. Cook's surgical procedure took place on July 20, 2012, that Mr. Cook was informed in January of 2013 that the retractor bolt from a surgical instrument was left in his body, and that the plaintiffs had filed a claim with the PCF against only Dr. Rigby and LAMMICO.[4] Therefore, OLOL contended, prescription was not suspended or interrupted against it, and the claims asserted by the plaintiffs in July of 2018, were filed more than three years after the alleged act, omission, or neglect. See LSA-R.S. 9:5628A.[5]

In opposition to the exception, the plaintiffs asserted that they did not know until September 27, 2017, when Dr. Rigby supplemented answers to interrogatories propounded to him, that Dr. Rigby intended to "allege that equipment failure or malfunction of the Cosgrove Valve Retractor System used by him" during Mr. Cook's July 20, 2012 surgery caused or contributed to Mr. Cook's damages. Dr. Rigby also gave an interrogatory response that OLOL was the owner of and the party responsible for maintaining the Cosgrove Valve Retractor System. Therefore, according to the

---

[4] We note that when OLOL filed its exception of prescription, it asserted that the plaintiffs' claims against OLOL were pending before the PCF.

[5] Louisiana Revised Statutes 9:5628A provides:

> No action for damages for injury or death against any ... hospital ... duly licensed under the laws of this state, ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

3

plaintiffs, Dr. Rigby expressly asserted that OLOL was a joint tortfeasor who caused or contributed to Mr. Cook's damages, and, pursuant to LSA-C.C. art. 2324C, interruption of prescription as to one joint tortfeasor was effective against all joint tortfeasors.[6] Accordingly, the plaintiffs argued, the timely filed suit against Dr. Rigby interrupted prescription as to OLOL. Further, although the plaintiffs recognized the case law cited by OLOL that all potential medical malpractice defendants must be added within ninety days of the dissolution of the medical review panel as provided in LSA-R.S. 40:1231.8A(2), they suggested that this should not be the case when a defendant conceals knowledge of a potentially liable party.

Following a hearing on the exception, the trial court found that the plaintiffs' claims against OLOL had prescribed. Accordingly, on July 23, 2019, the trial court signed a judgment sustaining the exception of prescription and dismissing the plaintiffs' claims against OLOL with prejudice.

The plaintiffs now appeal the trial court's July 23, 2019 judgment sustaining the exception of prescription, as well as the trial court's January 31, 2019 interlocutory judgment sustaining OLOL's exception of prematurity.[7] Dr. Rigby and LAMMICO have filed an answer to the appeal "out of an abundance of caution."[8]

## DISCUSSION

The Louisiana Legislature enacted the LMMA in response to a perceived medical malpractice insurance crisis. **Williamson v. Hospital Serv. Dist. No. 1 of Jefferson**, 04-0451 (La. 12/1/04), 888 So.2d 782, 785. The legislature intended the LMMA to reduce or stabilize medical malpractice insurance rates and to assure the availability of affordable medical service to the public by giving qualified health care providers two advantages: a limit on the amount of damages, and the right to an

---

[6] Louisiana Civil Code article 2324C provides that "[i]nterruption of prescription against one joint tortfeasor is effective against all joint tortfeasors."

[7] When an unrestricted appeal is taken from a final judgment, the appellant is entitled to seek review of all adverse interlocutory judgments prejudicial to him, in addition to the review of the final judgment. **Judson v. Davis**, 04-1699 (La.App. 1 Cir. 6/29/05), 916 So.2d 1106, 1112, writ denied, 05-1998 (La. 2/10/06), 924 So.2d 167.

[8] In their answer to the appeal, Dr. Rigby and LAMMICO admitted that they were not parties to OLOL's exception of prescription and did not seek to have the trial court's judgment sustaining the exception modified, revised, or reversed. They stated that their answer to the appeal was filed "out of an abundance of caution" in order to preserve their right to contest whether a contra non valentem exception to LSA-R.S. 9:5628 should be applied to the facts of this case.

4

opinion from a medical review panel before a plaintiff may proceed in litigation. **Dupuy v. NMC Operating Co., L.L.C.,** 15-1754 (La. 3/15/16), 187 So.3d 436, 439. As such, the LMMA is special legislation in derogation of the rights of tort victims, and the coverage of the act should be strictly construed. **Billeaudeau v. Opelousas Gen. Hosp. Auth.,** 16-0846 (La. 10/19/16), 218 So.3d 513, 520.

The rules governing the time within which a medical malpractice action can be brought are clearly set forth in LSA-R.S. 9:5628A, which provides, in pertinent part:

> No action for damages for injury or death against any ... hospital ... duly licensed under the laws of this state, ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

Both the one-year and three-year periods set forth in LSA-R.S. 9:5628 are prescriptive, with the qualification that the *contra non valentem* type exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the act, omission, or neglect. **Borel v. Young,** 07-0419 (La. 11/27/07), 989 So.2d 42, 69 (on rehearing).

Ordinarily, the party pleading prescription bears the burden of proving that the claim has prescribed. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. **Campo v. Correa,** 01-2707 (La. 6/21/02), 828 So.2d 502, 508. At the hearing on the exception raising the objection of prescription, evidence may be introduced to support or controvert the exception. See LSA-C.C.P. art. 931. When, as in this case, evidence is introduced at the hearing on the peremptory exception of prescription, the trial court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. **Carter v. Haygood,** 04-0646 (La. 1/19/05), 892 So.2d 1261, 1267.

In their appeal, the plaintiffs acknowledge that the prescriptive period set forth in the LMMA should be applied to qualified health care providers and that the suspension of prescription during and immediately after the medical review panel should be applied to all joint obligors, as clearly expressed in the LMMA. However, they argue, because

the LMMA is to be strictly construed, the effects of the LMMA on non-health care providers should not be extended any further.[9] The plaintiffs assert that OLOL successfully, although incorrectly, invoked the LMMA in order to be dismissed from this litigation on prescription grounds, even where it was acting in a fashion decidedly outside the scope of medical malpractice. Accordingly, the plaintiffs argue, "the procedural particularities of the LMMA have be[en] extended beyond their intended limits." The plaintiffs maintain that their claim against OLOL is as a negligent product owner unrelated to medical treatment and not within the ambit of the LMMA. Accordingly, the plaintiffs allege that they should benefit from the interruption of prescription and relation back principles as set forth in the Civil Code and the Code of Civil Procedure, in addition to the suspension of prescription provision of the LMMA. As such, the plaintiffs contend that the trial court erred in sustaining OLOL's peremptory exception raising the objection of prescription.

In support of this argument, the plaintiffs contend that, although OLOL is a well-known health care provider, OLOL was added as a defendant when Dr. Rigby implicated OLOL as the owner and the party responsible for maintaining the Cosgrove Valve Retractor System. The plaintiffs suggest that OLOL should not be considered a health care provider for the purposes of this litigation, arguing that its role in this case stems solely from its responsibility as the owner and custodian of the product, not under any relationship to the patient. They argue that their allegations against OLOL do not constitute "malpractice" and therefore, the LMMA does not apply. Thus, according to the plaintiffs, their claim against OLOL is timely. Contrarily, OLOL argues that the plaintiffs' claim against it clearly sounds in medical malpractice and falls within the ambit of the LMMA.

The Louisiana Supreme Court has determined that medical malpractice claims against health care providers are governed by the specific provisions of the LMMA

---

[9] Specifically, the plaintiffs argue that the Louisiana Supreme Court cases of **LeBreton v. Rabito**, 97-2221 (La. 7/8/98), 714 So.2d 1226, **Borel**, 989 So.2d 42 (on rehearing), and **Warren v. Louisiana Medical Mut. Ins. Co.**, 07-0492 (La. 12/2/08), 21 So.3d 186, 207 (on rehearing), discussed hereafter, dealt exclusively with qualified health care provider defendants, and do not apply to non-health care provider defendants. Therefore, according to the plaintiffs, the provisions of the Civil Code and the Code of Civil Procedure on the interruption of prescription and relation-back principles still apply to a non-health care provider.

regarding suspension of prescription to the exclusion of the general civil code articles on interruption of prescription.[10] **LeBreton v. Rabito**, 97-2221 (La. 7/8/98), 714 So.2d 1226, 1230. In **Borel**, 989 So.2d at 68, the supreme court extended the holding of **LeBreton** and held that the specific provisions of the LMMA regarding the suspension of prescription against joint tortfeasors applied to the exclusion of the general code article on interruption of prescription against joint tortfeasors. Thereafter, in **Warren v. Louisiana Medical Mut. Ins. Co.**, 07-0492 (La. 12/2/08), 21 So.3d 186, 207 (on rehearing), the supreme court reaffirmed its prior holdings in **Borel** and **LeBreton** and rejected the application of LSA-C.C. arts. 3462 and 2324C regarding the interruption of prescription, as well as the application of LSA-C.C.P. art. 1153 regarding relation-back principles, in medical malpractice actions, finding the LMMA provisions to be exclusive.[11] See **Warren**, 21 So.3d at 206-08.[12] However, the supreme court did not address whether the interruption of prescription and relation-back principles in LSA-C.C. arts. 3462 and 2324C and LSA-C.C.P. art. 1153 would be available to a non-health care provider in addition to the suspension of prescription principle set forth in the LMMA.

Subsequent to these supreme court decisions, as well as the trial court's judgment sustaining the exception of prescription in this matter and the lodging of the appeal, the first circuit decided two related companion cases, one involving the radiology defendants and the other concerning Kapp, the manufacturer of the retractor

---

[10] Louisiana Revised Statutes 40:1231.8 provides, in pertinent part:

> The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.

LSA-R.S. 40:1231.8A(2)(a).

[11] Louisiana Civil Code article 3462 provides that prescription is interrupted when the obligee commences an action against the obligor in a court of competent jurisdiction and venue. Additionally, LSA-C.C.P. art. 1153 provides that "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading."

[12] Subsequently, the supreme court in **Milbert v. Answering Bureau, Inc.**, 13-0022 (La. 6/28/13), 120 So.3d 678, determined that if a non-health care provider is a joint tortfeasor with a health care provider, once a request for a medical review panel is filed, the rules that suspend the running of prescription against a health care provider, qualified or not qualified, will be applied to a non-health care provider. **Milbert**, 120 So.3d at 686.

7

system.[13]  In **Cook v. Rigby**, 19-1475 (La.App. 1 Cir. 11/25/20), ___ So.3d ___, writ denied, 20-01493 (La. 3/9/21), ___ So.3d ___ (**Cook 1**), this court held that the plaintiffs' medical malpractice claims against the radiology defendants were prescribed, in light of the decisions in **Warren, Borel**, and **LeBreton**. In **Cook 1**, the plaintiffs made the argument, as here, that potentially liable medical malpractice defendants could delay revealing or conceal malpractice committed by other parties. However, this court rejected the plaintiffs' argument and found no legal authority to support the application of the general Civil Code and Code of Civil Procedure articles relative to the interruption of prescription and relation-back principles in the plaintiffs' medical malpractice action against these qualified health care providers. Therefore, because the alleged negligent interpretation of Mr. Cook's x-rays by the radiology defendants occurred in July of 2012 and because the plaintiffs' petition and complaint with the PCF were both filed more than three years later in July of 2018, the plaintiffs' claims filed against the radiology defendants almost six years after the alleged acts, omission, or neglect, were prescribed pursuant to LSA-R.S. 9:5628A. **Cook,** ___ So.3d at ___.

Thereafter, another panel of this court decided **Cook v. Rigby,** 19-0637 (La.App. 1 Cir. 12/2/20), ___ So.3d ___, writ denied, 20-1504 (La. 3/9/21) (**Cook 2**). **Cook 2** involved Kapp, the manufacturer of the Cosgrove Valve Retractor System, and specifically addressed whether the Civil Code articles on interruption of prescription applied to a non-health care provider joint tortfeasor.[14] The majority in **Cook 2** stated that the LMMA was never intended to protect non-health care providers, such as Kapp, and was never intended to apply to any claims other than malpractice claims. Therefore, the majority concluded that where a non-health care provider was named as a joint tortfeasor, applying the provisions of the LMMA to the exclusion of the general codal articles on the interruption of prescription for joint tortfeasors did not serve to facilitate any purpose of the LMMA. Accordingly, the majority in **Cook 2** held that the plaintiffs were able to benefit from the suspension of prescription under the LMMA, as

---

[13] We note that the arguments were broader in the parties' appellate briefs, as they were filed before this court's decisions in the **Cook** cases.

[14] The author of this opinion dissented in the **Cook** decision involving Kapp.

well as the general rules of interruption of prescription against a non-health care provider joint tortfeasor. Thus, the plaintiffs' claims against Kapp were timely, since the applicable one-year prescriptive period was interrupted by the filing of their timely suit against Dr. Rigby. **Cook,** ___ So.3d at ___.

With this framework in mind, in order to determine whether the plaintiffs' claim against OLOL in the case before us is prescribed, we must first determine whether the claim against OLOL is a malpractice claim subject to the provisions of the LMMA. The LMMA defines "malpractice" in LSA-R.S. 40:1231.1A(13), as follows:

> "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a patient.

Additionally, the LMMA defines "health care" as:

> "Health care" means any act or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement, or during or relating to or in connection with the procurement of human blood or blood components.

LSA-R.S. 40:1231.1A(9).

In **Coleman v. Deno,** 01-1517 (La. 1/25/02), 813 So.2d 303, the Louisiana Supreme Court set forth six factors to assist a court in determining whether certain conduct by a qualified health care provider constitutes "malpractice" as defined under the LMMA:

> (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill;
>
> (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached;
>
> (3) whether the pertinent act or omission involved assessment of the patient's condition;
>
> (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform;

(5) whether the injury would have occurred if the patient had not sought treatment; and

(6) whether the tort alleged was intentional.

**Coleman**, 813 So.2d at 315-16. If the allegations sound in medical malpractice, the case must proceed in accordance with the protocol set forth in the LMMA to the exclusion of the codal articles on the interruption of prescription. If, on the other hand, the allegations sound in general negligence, the case should proceed under general tort law, and the plaintiffs would have the benefit of interruption of prescription. See **Dupuy**, 187 So.3d at 440.[15] The issue of whether a claim sounds in medical malpractice is a question of law conducted under a *de novo* standard of review. **Arrington v. St. Tammany Parish Hospital Service District No. 1**, 18-0215 (La.App. 1 Cir. 10/31/18), 267 So.3d 618, 622.

With regard to the first **Coleman** factor, the plaintiffs argue that the alleged wrong was not "treatment related." Rather, they assert that OLOL's failure to account for how many bolts were in the Cosgrove Valve Retractor System prior to and after surgery, failure to inspect the functioning of the device and security of the bolts prior to surgery, and failure to notify that a bolt was missing, are all matters unrelated to medical treatment and do not involve dereliction of professional skill. We disagree.

In this matter, the Cosgrove Valve Retractor System was utilized by Dr. Rigby to hold Mr. Cook's sternal incision apart during the valve repair surgery, and the retractor bolt allegedly fell into Mr. Cook's chest during the surgical procedure. Ensuring the proper maintenance of equipment at the hospital chosen for surgery is directly related to the surgical treatment Mr. Cook received. See **Dupuy**, 187 So.3d at 441-42. Further, there is no requirement that an action must be contemporaneous with a patient's treatment in order to fall under the LMMA. Indeed, the LMMA itself specifically provides that failures in the "training and supervision" of health care providers is within the definition of malpractice, and such training and supervision necessarily occurs before any treatment. LSA-R.S. 40:1231.1A(13); **Dupuy**, 187 So.3d at 442. Further,

---

[15] The **Dupuy** case involved allegations similar to the one presented herein. The plaintiff therein alleged that he developed a post-operative infection and osteomyelitis following spine surgery. The plaintiff filed suit against the hospital alleging that the hospital failed to properly maintain and service the equipment utilized in the sterilization process. **Dupuy**, 187 So.3d at 437-38.

10

the plain language of the LMMA does not limit its application to direct treatment by a physician, as the definition of "malpractice" includes "an unintentional tort ... based on health care or professional services rendered by a health care provider, to a patient." LSA-R.S. 40:1231.1A(13); **Dupuy**, 187 So.3d at 443.

Although not every act that occurs in a hospital is treatment related, the tortious act alleged herein was directly related to Mr. Cook's health care and medical treatment. The present case is unlike **Williamson v. Hospital Service Dist. No. 1 of Jefferson**, 04-0451, (La. 12/1/04), 888 So.2d 782, 785, where the issue was whether the failure of the health care provider to properly maintain a wheelchair, which lost a wheel causing injury to a patient after discharge, was within the ambit of the LMMA. In **Williamson**, the supreme court determined that the alleged acts were not treatment related because the failure to repair the wheelchair and place it back in service without verifying that it was properly repaired, were not directly related to, nor involved, actual treatment of a patient. **Williamson**, 888 So.2d at 790. Consequently, the first **Coleman** factor weighs in favor of OLOL and a finding that the alleged act of negligence falls within the ambit of the LMMA.

As to the second **Coleman** factor, the plaintiffs argue that medical expert evidence is not necessary to determine that pieces of surgical equipment should not fall off into a patient during surgery. On the other hand, OLOL contends that expert testimony will be required to determine whether the Cosgrove Valve Retractor System was properly maintained, including the protocol for maintenance and service, the appropriate standard of care, and whether the standard of care was breached. We agree with OLOL that expert medical evidence is required. Accordingly, we find that this factor also favors OLOL.

The third **Coleman** factor is whether the pertinent act or omission involved assessment of the patient's condition. Because the alleged negligent act occurred in the context of OLOL's relationship with and assessment of the Cosgrove Valve Retractor System rather than with the patient, this factor favors the plaintiffs.

However, the fourth factor, whether the incident occurred in the context of a physician-patient relationship, or was within the scope of activities that a hospital is

11

licensed to perform, favors a finding that the plaintiffs' claim falls within the ambit of the LMMA. Clearly, the use of the Cosgrove Valve Retractor System occurred during the surgery performed by Dr. Rigby to repair Mr. Cook's mitral valve. Additionally, the utilization and maintenance of surgical equipment is within the scope of activities performed by a hospital. The failure by a hospital to maintain its surgical equipment involves the failure to do an act "for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement[.]" See LSA-R.S. 40:1231.1A(9).

We find the fifth **Coleman** factor, whether the injury would have occurred if the patient had not sought treatment, also favors OLOL. Undoubtedly, if Mr. Cook had not sought treatment at OLOL, the retractor bolt would not have fallen into his chest during the valve replacement surgery. Mr. Cook's injury occurred during the treatment that he purposefully entered the hospital to undergo. Lastly, whether the tort alleged was intentional, does not have relevance to the present matter, and we need not consider the sixth **Coleman** factor.

After considering these factors and applying them to the facts of this case, we find that the plaintiffs' allegation that OLOL failed to "properly maintain" the Cosgrove Valve Retractor System used in Mr. Cook's surgery necessarily falls within the definition of "malpractice" under the LMMA. The act alleged by the plaintiffs constitutes an "unintentional tort ... based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient ... in the training or supervision of health care providers[.]" LSA-R.S. 40:1231.1A(13).

Having decided that the plaintiffs' claim against OLOL falls within the ambit of the LMMA to the exclusion of the codal articles regarding interruption of prescription and relation-back principles, we next determine whether the plaintiffs' claim is prescribed. Similar to **Cook 1**, the plaintiffs' claim against OLOL was filed nearly six years after the July 20, 2012 surgery. Prescription was evident on the face of the pleadings, and the plaintiffs failed to present evidence to show that the action was not prescribed. Therefore, the plaintiffs' claim against OLOL is prescribed according to the prescriptive periods set forth for medical malpractice actions in LSA-R.S. 9:5628A, and

we find no error by the trial court in sustaining OLOL's exception of prescription.[16] Further, considering the above, we deny as moot the answer to the appeal filed by the plaintiffs on behalf of Dr. Rigby and LAMMICO.

## CONCLUSION

For these reasons, we affirm the July 23, 2019 judgment of the trial court, which sustained OLOL's exception of prescription and dismissed the claims of the plaintiffs. Additionally, the answer to the appeal is denied. All costs of this appeal are assessed to plaintiffs, William Cook and Renee Soileau.

**JUDGMENT AFFIRMED; ANSWER TO APPEAL DENIED.**

---

[16] Additionally, we need not address the January 31, 2019 judgment of the trial court, which sustained OLOL's exception of prematurity, as the plaintiffs' claim against OLOL is prescribed.