# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #015

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **15th day of March, 2016**, are as follows:

**BY HUGHES, J.**:

2015-CC-1114        IN RE: MEDICAL REVIEW PANEL CLAIM OF ROSE TILLMAN   C/W   IN RE:
                    THE MEDICAL REVIEW PANEL CLAIM OF ROSE TILLMAN   C/W   JAHMAL T.
                    TILLMAN AND JIRUS T. TILLMAN, ON BEHALF OF THE DECEDENT, ROSE
                    TILLMAN v. THE STATE OF LOUISIANA, ON BEHALF OF DURGA RAM SURE,
                    M.D., ET AL. (Parish of Jefferson)

                    In the case of In Re: Medical Review Panel Claim of Rose Tillman,
                    the judgment of the appellate court is reversed and the district
                    court judgment, denying the defendants' peremptory exceptions,
                    pleading the objection of prescription, is reinstated; we remand
                    the matter to the 24th Judicial District Court for the Parish of
                    Jefferson for further proceedings.
                    REVERSED; DISTRICT COURT JUDGMENT REINSTATED; REMANDED TO
                    DISTRICT COURT.

                    GUIDRY, J., concurs for the reasons assigned by Crichton, J.
                    CRICHTON, J., concurs in the result and assigns reasons.

SUPREME COURT OF LOUISIANA

NO. 2015-CC-1114

IN RE: MEDICAL REVIEW PANEL CLAIM OF ROSE TILLMAN

CONSOLIDATED WITH

IN RE: THE MEDICAL REVIEW PANEL CLAIM OF ROSE TILLMAN

CONSOLIDATED WITH

JAHMAL T. TILLMAN AND JIRUS T. TILLMAN,
ON BEHALF OF THE DECEDENT, ROSE TILLMAN VERSUS THE STATE
OF LOUISIANA, ON BEHALF OF DURGA RAM SURE, M.D., ET AL.

CONSOLIDATED WITH

NO. 2015-CC-1263

IN RE: MEDICAL REVIEW PANEL FOR THE
CLAIM OF PEIGHTON MILLER, ET AL. VERSUS TULANE LAKESIDE
HOSPITAL, ET AL.

CONSOLIDATED WITH

NO. 2015-CC-1264

IN RE: MEDICAL REVIEW PANEL FOR THE
CLAIM OF PEIGHTON MILLER, ET AL. VERSUS TULANE LAKESIDE
HOSPITAL, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON

**HUGHES, J.**

We granted the plaintiffs' writs in these consolidated cases to review the

appellate court's interpretation of Medical Malpractice Act ("MMA") provision

LSA-R.S. 40:1231.8(A)(2)(b) (formerly LSA-R.S. 40:1299.47(A)(2)(b)),[1]

---

[1] House Concurrent Resolution No. 84 of the 2015 Regular Session authorized and directed the

directing that a request for review of a malpractice claim "shall be deemed filed on the date of receipt of the request stamped and certified by the division of administration." The Louisiana Division of Administration ("DOA") maintains and the appellate court agrees that Section 1231.8(A)(2)(b) requires that a request for review to be "stamped and certified" by the DOA prior to being considered "received." This construction renders the plaintiffs' electronically-transmitted requests untimely, as prescribed, despite having been filed via facsimile transmission before midnight on the last day of the prescriptive period, though after the DOA's regular business hours. For the reasons that follow, we conclude that when LSA-R.S. 40:1231.8(A)(2)(b) is read in conjunction with Louisiana's Uniform Electronic Transmission Act ("UETA"), LSA-R.S. 9:2601 et seq., it is clear that the plaintiffs' facsimile-transmitted requests for review were "received" by the DOA when transmitted into the DOA's facsimile transmission system on the last day of the prescriptive period, and the plaintiffs' requests for review were not prescribed.

## FACTS AND PROCEDURAL HISTORY

The plaintiffs in **In Re: Medical Review Panel Claim of Rose Tillman** filed a petition in the 24th Judicial District Court for the Parish of Jefferson, on August 13, 2013, alleging: that they were the surviving children of Rose Tillman; that they had requested a review of a medical malpractice complaint against West Jefferson Medical Center, pursuant to LSA-R.S. 40:1231.8; and that they were filing suit for the purpose of obtaining discovery in the matter. In 2014 several

Louisiana State Law Institute to reorganize and recodify the "Miscellaneous Health Provisions" Chapter of Title 40 of the Louisiana Revised Statutes of 1950 and further provided that the Louisiana State Law Institute shall change any references to Sections, Chapters, Subchapters, Parts, and Subparts in the Titles of the Louisiana Revised Statutes of 1950 and the Codes as necessary to reflect the new Sections, Chapters, Subchapters, Parts, and Subparts resulting from 2015 H.C.R. No. 84. Accordingly, LSA-R.S. 40:1299.47 was redesignated as LSA-R.S. 40:1231.8. Although the district court and appellate court in these cases referenced former LSA-R.S. 40:1299.47(A)(2)(b), we refer herein to the law's current designation of LSA-R.S. 40:1231.8(A)(2)(b). We note that no substantive changes have been made to former LSA-R.S. 40:1299.47 since 2012 La. Acts, No. 802.

peremptory exceptions pleading the objection of prescription were filed, contending that the plaintiffs' request for review of their medical malpractice claim was deemed filed on May 23, 2013 and, as such, was prescribed as the filing date was more than one year after Ms. Tillman's death.

The following are the undisputed, salient facts of the **Tillman** case. Ms. Tillman died on May 22, 2012 due to the alleged malpractice of the defendants in prescribing a medication (Dilantin) to Ms. Tillman, which carried the risk of serious complications, and in failing to discontinue the medication after she began experiencing an adverse reaction to it. The plaintiffs' request for review of their medical malpractice claim was transmitted to the DOA via facsimile transmission on May 22, 2013, after the 5:00 p.m. closure of the DOA office, and the DOA stamped the facsimile transmission as filed on the following business day, May 23, 2013. The plaintiffs' request was acknowledged by the Patient Compensation Fund ("PCF") Medical Malpractice Compliance Director, Susan Gremillion, via a letter dated May 31, 2013, as having been filed on May 22, 2013,[2] and a subsequent November 10, 2014 letter from Ms. Gremillion "corrected" the filing date to "5/23/2013."[3] The DOA's website, at that time, informed the public that "faxed filings . . . received after 5:00 p.m. will not be stamped until the next working date."

The district court denied the exceptions of prescription, concluding that the DOA's internal policy of "forward-stamping requests faxed after business hours is unauthorized by statute." The appellate court granted writs and reversed the district court. See **In Re: Medical Review Panel Claim of Rose Tillman**, 15-

---

[2] The PCF's May 31, 2013 letter stated in pertinent part: "This will acknowledge receipt of your request for a medical review panel dated May 22, 2013."

[3] The PCF's November 10, 2014 letter to the plaintiffs stated in pertinent part:

Below are the corrections from our notice dated **May 31, 2013**:

**Filing Date - 5/23/2013**

3

0178 (La. App. 5 Cir. 4/22/15) (unpublished). In so ruling, the appellate court relied on the language of LSA-R.S. 40:1231.8(A)(2)(b) ("The request for review of a malpractice claim . . . shall be deemed filed on the date of receipt of the request stamped and certified by the division of administration . . . .") to conclude that the plaintiffs' faxed request for review was not deemed filed until the DOA "stamped and certified" it on May 23, 2013. **Id.** at 2. Concluding the request was untimely, the appellate court ordered the district court to enter a judgment in favor of the defendants and dismiss the plaintiffs' case with prejudice. **Id.** On application of the plaintiffs, this court granted a writ of certiorari. See **In Re: Medical Review Panel Claim of Rose Tillman**, 15-1114 (La. 10/2/15), 178 So.3d 576.

**In Re: Medical Review Panel Proceedings for the Claim of Peighton Miller v. Tulane-Lakeside Hospital** was filed on June 20, 2013 by the defendant, Tulane-Lakeside Hospital, in the 24th Judicial District Court for the Parish of Jefferson, for the purpose of obtaining discovery in the matter. Thereafter, in 2015, peremptory exceptions pleading the objection of prescription were filed, contending that the plaintiffs' request for review of their medical malpractice claim was deemed filed on April 5, 2013 and, as such, was prescribed as the filing date was more than one year from the alleged malpractice or discovery thereof.

The following are the undisputed, salient facts of the **Miller** case. On April 1, 2012, plaintiff Lauren Reyes sought care at Tulane-Lakeside Hospital for the birth of her child, Peighton Miller, who was born on April 2, 2012; during delivery Peighton sustained a braxial plexus injury to the nerves in her right shoulder. Ms. Reyes and Peighton were discharged from the hospital on April 4, 2012. The plaintiffs' request for review of their medical malpractice claim was transmitted to the DOA via facsimile transmission on April 4, 2013, after the 5:00 p.m. closure of the DOA office. The DOA stamped the facsimile transmission as filed on the

4

following business day, April 5, 2013.[4] The DOA's website, at that time, informed the public that "faxed filings . . . received after 5:00 p.m. will not be stamped until the next working date."

The district court denied the exceptions of prescription, holding that the DOA received the plaintiffs' complaint by facsimile transmission on April 4, 2013, and "Plaintiffs should not be penalized by the fact that the complaint was not actually stamped as filed until the next day." The district court further specifically found that "prescription began to run in this matter on April 4, 2012, the date the Court determined that Plaintiffs discovered the alleged medical malpractice." The appellate court granted writs and reversed the denial of the exceptions of prescription. See **In Re: Medical Review Panel for the Claim of Peighton Miller v. Tulane-Lakeside Hospital**, 15-0270, 15-0271 (La. App. 5 Cir. 5/28/15) (unpublished). The appellate court ruled, as in **In Re: Medical Review Panel Claim of Rose Tillman**, that pursuant to LSA-R.S. 40:1231.8(A)(2)(b) the filing date was the date the plaintiffs' faxed request for review was "stamped and certified" by the DOA on April 5, 2013, which was on the day after it was faxed. **Id.** at 2. Concluding the request for review was untimely, the appellate court ordered the district court to enter a judgment in favor of the defendants and dismiss the plaintiffs' case with prejudice.[5] **Id.** at 2-3. On application of the plaintiffs, this

_____

[4] The PCF's March 20, 2015 letter to the plaintiffs stated in pertinent part:

> Below are the corrections from our notice dated **April 09, 2013**:
>
> **Filing Date - 4/5/2013**

Although the PCF's April 9, 2013 letter, referenced in the March 20, 2015 letter, does not appear in the **Miller** appellate record, a May 23, 2013 letter from the PCF to an attorney, selected by the PCF to serve as the attorney chairman for the medical review panel, does appear in the appellate record, and it was noted therein that the request for review in the **Miller** case was filed on "4/4/2013."

[5] Because the appellate court concluded the request for a medical review panel was untimely, the issue of whether the **Miller** plaintiffs had discovered the alleged malpractice before April 4, 2012 was pretermitted. See **In Re: Medical Review Panel for the Claim of Peighton Miller v. Tulane-Lakeside Hospital**, at 2.

5

court granted writs of certiorari. See **In Re: Medical Review Panel for the Claim of Peighton Miller v. Tulane Lakeside Hospital**, 15-1263, 15-1264 (La. 10/2/15), 178 So.3d 577.

The assignments of error asserted by the plaintiffs in these consolidated cases essentially contend that: (1) the appellate court erred in construing LSA-R.S. 40:1231.8(A)(2)(b) as clear and unambiguous when it is silent as to the express treatment of fax-filings, and the statement therein that a request for review of a malpractice claim is "deemed filed on the date of receipt of the request stamped and certified by the division of administration" is vague and susceptible of different meanings; (2) the appellate court's construction of LSA-R.S. 40:1231.8(A)(2)(b) to allow the DOA to determine the filing date of a request for review based solely on when a DOA employee stamps a fax-filing, not when the request was actually received, conflicts with the UETA, LSA-R.S. 9:2601 et seq.; (3) the DOA's "internal office policy" of stamping fax-filings received after 5:00 p.m. as filed on the next business day, with no express legislative authority to do so, impermissibly shortens the prescriptive period for filing a medical malpractice complaint; and (4) allowing the DOA such authority constitutes an unconstitutional delegation of legislative authority.

## LAW AND ANALYSIS

The facts are not in dispute in these consolidated cases, which present purely legal issues related to whether the DOA acted in accordance with applicable law in stamping the fax-filed requests for review of the plaintiffs' medical malpractice claims as filed on the business day following facsimile transmission of the requests. As only questions of law are presented, review by this court is de novo. See **Thibodeaux v. Donnell**, 08-2436 (La. 5/5/09), 9 So.3d 120, 122-23; **Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc.**, 06-0582 (La. 11/29/06), 943 So.2d 1037, 1045.

6

Pursuant to LSA-C.C. art. 3492, delictual actions are subject to a liberative prescription of one year, and prescription commences to run from the day the injury or damage is sustained.  In addition, LSA-R.S. 9:5628 provides that actions against certain health care providers, arising out of patient care, must be filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of the discovery of the act, omission, or neglect; in all events, such claims must be filed at the latest within three years from the date of the alleged act, omission, or neglect.[6]  See **Milbert v. Answering Bureau, Inc.**, 13-0022 (La. 6/28/13), 120 So.3d 678, 684.

Civil Code Articles 3454 and 3456 govern the computation of a prescriptive period, providing:

### Art. 3454. Computation of time

In computing a prescriptive period, the day that marks the commencement of prescription is not counted.  Prescription accrues *upon the expiration of the last day of the prescriptive period*, and if that day is a legal holiday, prescription accrues upon the expiration of the next day that is not a legal holiday.

### Art. 3456. Computation of time by years

---

[6] Revised Statute 9:5628 provides:

A.  No action for damages for injury or death against any physician, chiropractor, nurse, licensed midwife practitioner, dentist, psychologist, optometrist, hospital or nursing home duly licensed under the laws of this state, or community blood center or tissue bank as defined in R.S. 40:1231.1(A), whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.
B. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
C. The provisions of this Section shall apply to all healthcare providers listed herein or defined in R.S. 40:1231.1 regardless of whether the healthcare provider avails itself of the protections and provisions of R.S. 40:1231.1 et seq., by fulfilling the requirements necessary to qualify as listed in R.S. 40:1231.2 and 1231.4.

> If a prescriptive period consists of one or more years, prescription accrues **upon the expiration of the day of the last year** that corresponds with the date of the commencement of prescription.

(Emphasis added.)

Before a medical malpractice suit can be filed, the claimant must file a complaint seeking review of the complaint by a medical review panel, pursuant to the MMA.[7] See **Milbert v. Answering Bureau, Inc.**, 120 So.3d at 684; **Borel v. Young**, 07-0419 (La. 11/27/07), 989 So.2d 42, 61 (on rehearing); **LeBreton v. Rabito**, 97-2221 (La. 7/8/98), 714 So.2d 1226, 1230-31. This court previously recognized, in **Borel v. Young** and **LeBreton v. Rabito**, that the legislature, in enacting the MMA, took special cognizance of the need to fully protect plaintiffs from the detrimental effect of liberative prescription, allowing for suspension of the time within which suit must be filed during the pendency of the review process and for ninety days following notification to the claimant or his or her attorney of the panel opinion. See also LSA-R.S. 40:1231.8(A)(2)(a) (formerly LSA-R.S. 40:1299.47(A)(2)(a)).[8]

At issue in the instant case is the meaning to be attributed to MMA Section 1231.8(A)(2)(b), as it affects the timeliness of a medical review panel request fax-filed on the last day of the prescriptive period. Section 1231.8(A)(2)(b) provides:

> The request for review of a malpractice claim under this Section **shall be deemed filed on the date of receipt of the request stamped and certified by the division of administration** or on the date of mailing of the request if mailed to the division of administration by certified or registered mail only upon timely compliance with the provisions of

---

[7] See LSA-R.S. 40:1231.8(A)(1)(a) ("All malpractice claims against health care providers covered by this Part, other than claims validly agreed for submission to a lawfully binding arbitration procedure, shall be reviewed by a medical review panel established as hereinafter provided for in this Section."); LSA-R.S. 40:1231.8(B)(1)(a)(i) ("No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.").

[8] Section 1231.8(A)(2)(a) provides, in pertinent part: "The filing of the request for a review of a claim shall suspend the time within which suit must be instituted . . . until ninety days following notification, by certified mail . . . to the claimant or his attorney of the issuance of the opinion by the medical review panel . . . ."

8

Subparagraph (1)(c) or (d) of this Subsection. Upon receipt of any request, the division of administration shall forward a copy of the request to the board within five days of receipt.

(Emphasis added.)

The DOA interpreted this provision to mean that a fax-filed request for review of a medical malpractice claim is only "deemed filed," after receipt, on the date on which the DOA has "stamped and certified" the request as filed, regardless of when the fax-filed request was actually received in the DOA's office, and this construction was upheld by the appellate court. The plaintiffs contend that the DOA should consider a fax-filed request for review as filed on the date it is actually received in the DOA's office, by reference to the date of transmission indicated on the fax machine's automatic time and date recording system; to do otherwise, the plaintiffs contend, impermissibly shortens the one-year prescriptive period and runs afoul of the UETA, LSA-R.S. 9:2601 et seq.

The starting point in the interpretation of any statute is the language of the statute itself. **M.J. Farms, Ltd. v. Exxon Mobil Corporation**, 07-2371 (La. 7/1/08), 998 So.2d 16, 27. See also **Kelly v. State Farm Fire & Casualty Company**, 14-1921 (La. 5/5/15), 169 So.3d 328, 335 ("[W]e begin as we must with the words of the statute itself."). The text of a law is the best evidence of legislative intent. LSA-R.S. 24:177(B)(1).

As stated in LSA-C.C. art. 9, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. See also LSA-R.S. 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."). When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. When the words of a law are ambiguous,

9

their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. Laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13.

The statutory provision at issue in the instant case, LSA-R.S. 40:1231.8(A)(2)(b), provides that a request for review of a malpractice claim that is mailed by registered or certified mail is considered as filed on the date of mailing; however, as to any other method of delivery,[9] Paragraph (A)(2)(b) states that the request "shall be deemed filed on the date of receipt of the request stamped and certified by the division of administration." We conclude that the quoted section of Paragraph (A)(2)(b) is ambiguous, as applied to a fax-filed request for review, since it can mean either: (1) that a Section 1231.8(A)(2)(b) request is to be considered as filed on the date that it is actually received in the DOA's office and, then, the DOA has only the ministerial task of stamping and certifying on what date the request was actually received; or (2) that a Section 1231.8(A)(2)(b) request cannot be considered as received by the DOA until the day that it is "stamped and certified" as received by a DOA employee. The district court decisions in these two consolidated cases ruled that the pertinent language in Section 1231.8(A)(2)(b) meant the former, while the appellate court decisions adopted the latter construction. Furthermore, the DOA's internal policy also adopts the latter interpretation, as evidenced by the statement on its public website indicating that requests could be sent via fax, but if received after 5:00 p.m. the date stamped would be the next business day.

---

[9] We note that the language of Section 1231.8(A)(2)(b) does not explicitly address fax-filings, particularly mentioning only the delivery of requests for review "by certified or registered mail" but implicitly admitting other means of delivery in providing the generally applicable provision that a "request for review of a malpractice claim . . . shall be deemed filed on the date of receipt of the request stamped and certified by the division of administration"; since the legislature placed no limitation in the language of Section 1231.8(A)(2)(b) on the method of transmission of the request for review, fax-filing is not specifically prohibited.

Our review of the provisions of the UETA, LSA-R.S. 9:2601 through LSA-R.S. 9:2620 leads us to conclude that the UETA encompasses the electronic transmission of legal documents, via facsimile, by parties to governmental agencies. Except as otherwise provided,[10] the UETA "applies to electronic records[11] and electronic signatures relating to a transaction.[12]" LSA-R.S. 9:2603(A). A fax-filed request for review of a medical malpractice claim falls within the broad definition of an "electronic record," since, pursuant to the definitions set forth in LSA-R.S. 9:2602(7), (10), and (13), it is "a record . . . sent

_____

[10] Paragraph (B) of LSA-R.S. 9:2603 lists the following exceptions to UETA coverage:

> This Chapter shall not apply to:
>     (1) A transaction to the extent it is governed by a law governing the creation and execution of wills, codicils, or testamentary trusts.
>     (2) A transaction to the extent it is governed by the provisions of Title 10 of the Louisiana Revised Statutes of 1950, other than R.S. 10:1-107.
>     (3) (Reserved).
>     (4)(a) A law governing adoption, divorce, or other matters of family law.
>     (b) Any notice of any of the following:
>     (i) The cancellation or termination of utility services, including water, heat, and power.
>     (ii) Default, acceleration, repossession, foreclosure, or eviction, or the right to cure, under a credit agreement secured by, or a rental agreement for, a primary residence of an individual.
>     (iii) The cancellation or termination of health insurance or benefits or life insurance benefits, excluding annuities.
>     (iv) Recall of a product, or material failure of a product, that risks endangering health or safety.
>     (c) Any document required to accompany any transportation or handling of hazardous materials, pesticides, or other toxic or dangerous materials.
>     (d) Publications required by law to be published in the official journals provided for in Chapter 2, 4, or 5 of Title 43 of the Louisiana Revised Statutes of 1950.

[11] An "electronic record" is defined by LSA-R.S. 9:2602(7) as "*a record* created, generated, *sent*, communicated, received, or stored *by electronic means*." A "record" includes "*information* that is inscribed on a tangible medium or that is *stored in an electronic* or other *medium and is retrievable in perceivable form*." See LSA-R.S. 9:2602(13). "Information" includes "*data*, *text*, images, sounds, codes, computer programs, software, and databases, or the like." See LSA-R.S. 9:2602(10). "Electronic" means "relating to *technology having electrical*, digital, magnetic, wireless, optical, electromagnetic, or similar *capabilities*."). LSA-R.S. 9:2602(5). (Emphasis added.)

[12] A "transaction" is defined by LSA-R.S. 9:2602(16) as "*an action* or set of *actions occurring between two or more persons relating to the conduct of* business, commercial, or *governmental affairs*." A "person" includes "an *individual*, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, *governmental agency,* public corporation, or any other legal or commercial entity." See LSA-R.S. 9:2602(12). (Emphasis added.) A "governmental agency" is defined in LSA-R.S. 9:2601(9) as "an executive, legislative, or judicial agency, department, board, commission, authority, institution, unit, or instrumentality of the federal government or of a state or of a county or parish, municipality, or other political subdivision of a state."

. . . by electronic means," consisting of "information" in the form of "data [and] text" that is "stored in an electronic or other medium and is retrievable." Further, a fax-filed request for review of a medical malpractice claim is related to a "transaction," since, pursuant to the definitions set forth in LSA-R.S. 9:2602(12) and (16), it is "an action" "between two or more persons" (the plaintiffs and the governmental agency, the DOA), which relates "to the conduct of . . . governmental affairs" (as it is the statutory duty of the DOA pursuant to LSA-R.S. 40:1231.8(A)(2)(b) to process a plaintiff's request and forward it to the PCF Oversight Board). Therefore, we conclude that the electronic transmission, via facsimile machine, of a request for review of a medical malpractice claim is subject to the provisions of the UETA.

UETA Section 2615(B) states that "[u]nless otherwise agreed between the sender and the recipient, an electronic record is received when it: (1) Enters an information processing system[13] that the recipient has designated or uses for the purpose of receiving electronic records or information of the type sent and from which the recipient is able to retrieve the electronic record. (2) Is in a form capable of being processed by that system." An electronic record is received under LSA-R.S. 9:2615(B) "even if no individual is aware of its receipt." LSA-R.S. 9:2615(E). Comment (e) to Section 2615 further states: "Subsection E makes clear that receipt is not dependent on a person having notice that the record is in the person's system. Receipt occurs when the record reaches the designated system whether or not the recipient ever retrieves the record. The paper analog is the recipient who never reads a mail notice."

Thus, the import of these UETA provisions is that the electronic transmission of a record, such as the plaintiffs' fax-filed requests for review of

---

[13] An "information processing system" means "*an electronic system for* creating, generating, *sending, receiving*, storing, displaying, or processing *information*." LSA-R.S. 9:2602(11) (emphasis added).

their medical malpractice claims, occurs when the electronic record "[e]nters an information processing system" (which, pursuant to LSA-R.S. 9:2602(11), includes "an electronic system for . . . receiving . . . information" and thus encompasses a facsimile machine) that the recipient has "designated or uses for the purpose of receiving electronic records or information of the type sent and from which the recipient is able to retrieve the electronic record . . . even if no individual is aware of its receipt." See LSA-R.S. 9:2615(B), (E).[14]

We note that the UETA also states, in Section 2618(B), that "[t]o the extent a governmental agency uses electronic records . . . the governmental agency . . . may specify . . . [t]he *manner* and format in which the electronic records must be . . . *received* . . . ." (Emphasis added.) Nevertheless, Section 2603(D) also provides that a transaction subject to the UETA is also subject to "other applicable substantive law."

The Administrative Procedure Act ("APA"), LSA-R.S. 49:950 et seq., requires an agency that engages in rulemaking to follow certain procedures for the adoption of rules.[15] See LSA-R.S. 49:952-953. Although we do not find it

---

[14] Compare LSA-R.S. 13:850(A), stating:

> Any paper in a civil action may be filed with the court by facsimile transmission. All clerks of court shall make available for their use equipment to accommodate facsimile filing in civil actions. Filing shall be deemed complete at the time that the facsimile transmission is received and a receipt of transmission has been transmitted to the sender by the clerk of court. The facsimile when filed has the same force and effect as the original.

[15] An "agency" includes "each state board, commission, department, agency, officer, or other entity which makes rules, regulations, or policy, or formulates, or issues decisions or orders pursuant to, or as directed by, or in implementation of the constitution or laws of the United States or the constitution and statutes of Louisiana, except the legislature or any branch, committee, or officer thereof, any political subdivision, as defined in Article VI, Section 44 of the Louisiana Constitution, and any board, commission, department, agency, officer, or other entity thereof, and the courts." LSA-R.S. 49:951(2). A "rule" includes "each agency statement, guide, or requirement for conduct or action, exclusive of those regulating only the internal management of the agency and those purporting to adopt, increase, or decrease any fees imposed on the affairs, actions, or persons regulated by the agency, which has general applicability and the effect of implementing or interpreting substantive law or policy, or which prescribes the procedure or practice requirements of the agency . . . ." LSA-R.S. 49:951(6). "Rulemaking" means "the process employed by an agency for the formulation of a rule. Except where the context clearly provides otherwise, the procedures for adoption of rules and of emergency rules as provided in R.S. 49:953 shall also apply to adoption, increase, or decrease of fees. The fact

necessary to decide herein whether the decision of an agency, such as the DOA, in order to specify a manner of receiving an electronic transmission different than that prescribed in UETA Section 2615, must do so via the rulemaking procedures set forth in the APA, we note that the defendants in this case suggest that such was done, citing La. Admin. Code, Title 1, Part III, § 307. Section 307 provides, in pertinent part: "Unless otherwise provided by law, all pleadings, documents or other items shall be deemed filed on the date received by the clerk of court if received by 5 p.m. Items filed after 5 p.m. shall be deemed filed on the next business day." However, LAC 1:III.307 is a provision applicable only to "the Division of Administrative Law" (see LAC 1:III.101[16]), which is an adjudicative agency that was created within the Department of State Civil Service, by LSA-R.S. 49:991.[17] In contrast, the DOA is a separate agency within the office of the governor (see LSA-R.S. 36:4[18]). Therefore, LAC 1:III.307 does not apply to the

---

that a statement of policy or an interpretation of a statute is made in the decision of a case or in an agency decision upon or disposition of a particular matter as applied to a specific set of facts involved does not render the same a rule within this definition or constitute specific adoption thereof by the agency so as to be required to be issued and filed as provided in this Subsection." LSA-R.S. 49:951(7).

[16] The purpose of Part III, "Division of Administrative Law," is set forth in LAC 1:III.101, providing in pertinent part: "*Adjudications conducted by the Division of Administrative Law* shall be governed by the Administrative Procedure Act (APA), R.S. 49:950 et seq., and the Division of Administrative Law Act (DALA), R. S. 49:991 et seq. To the extent that these rules are not in conflict with other statutory authority, they establish additional procedures *for regulating adjudications conducted by the division* . . . ." (Emphasis added.)

[17] "The division of administrative law, hereafter referred to as 'division', is created in the Department of State Civil Service." LSA-R.S. 49:991. See also LSA-R.S. 36:4(A) ("In accordance with the provisions of Article IV, Section 1 and Article XIV, Section 6 of the Constitution of Louisiana, all offices, boards, commissions, agencies, and instrumentalities of the *executive branch* of state government, whether constitutional or statutory, and/or their functions, *powers, duties, and responsibilities shall be allocated*, either in the Act by which this Title was created or by legislation enacted subsequent thereto, within the departments listed in this Section, except as provided in Subsections B and C of this Section, and in order to comply with this constitutional mandate, the agencies of the executive branch of state government hereinafter enumerated, whether heretofore created by the constitution or by statute, and/or their functions, powers, duties, and responsibilities are allocated, in the manner hereinafter set forth in this Title, *within the following designated departments*: (1) *Department of State Civil Service* . . . ."). (Emphasis added.)

[18] "The office of the governor shall be in the executive branch of state government . . . . The following agencies and their powers, duties, functions, and responsibilities are hereby transferred to the office of the governor . . . . Division of administration." LSA-R.S. 36:4(B)(1)(a).

instant case, which does not involve adjudications within the Department of State Civil Service, Division of Administrative Law.

Regardless, even if the DOA had properly promulgated a rule to deviate from UETA Section 2615, which directs that an electronic transmission is "received" when it enters the information processing system designated by the recipient, here the DOA's facsimile machine, any such rule that effectively shortens a tort victim's one-year prescriptive period would be invalid, as a usurpation of the legislative power.

Rules and regulations promulgated by an agency may not exceed the authorization delegated by the legislature. <u>See</u> **State v. Alfonso**, 99-1546 (La. 11/23/99), 753 So.2d 156, 161-62; **State v. Taylor**, 479 So.2d 339, 341 (La. 1985) ("The general rule is that the legislative power cannot be delegated . . . . However, this court has recognized that the legislative branch has the authority to delegate to administrative boards and agencies of the state the power to ascertain and determine the facts upon which the laws are to be applied and enforced."); **Schwegmann Brothers Giant Super Markets v. McCrory**, 237 La. 768, 787-88, 112 So.2d 606, 613 (1959) ("It is now well settled that the Legislature may make the operation or application of a statute contingent upon the existence of certain conditions, and may delegate to some executive or administrative board the power to determine the existence of such facts and to carry out the terms of the statute. So long as the regulation or action of the official or board authorized by statute does not in effect determine what the law shall be, or involve the exercise of primary and independent discretion, but only determines within prescribed limits some fact upon which the law by its own terms operates, such regulation is administrative and not legislative in its nature."). <u>See also</u> LSA–R.S. 49:963 ("The validity or applicability of a rule may be determined in an action for declaratory judgment in the district court of the parish in which the agency is located . . . . The court shall

15

declare the rule invalid or inapplicable if it finds that it violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without substantial compliance with required rulemaking procedures.").

The DOA has established a procedure that allows a plaintiff to file a request for review of a malpractice claim, via facsimile transmission after DOA office hours. However, the DOA's policy of thereafter stamping and certifying such a fax-filed request as having been filed on the succeeding business day effectively circumvents the directive of LSA-R.S. 40:1231.8(A)(2)(a), that "[t]he *filing* of the request for a review of a claim *shall suspend* the time within which suit must be instituted . . ." (emphasis added), as well as avoiding the UETA's Section 2615 rule that receipt occurs when the record reaches the designated system. Furthermore, in the instant consolidated cases, since the plaintiffs' fax-filed requests were transmitted on the last day of the applicable prescriptive period but prior to the expiration of that day, the DOA's failure to deem the fax-filing as filed on the day it entered the DOA's facsimile system served to shorten the one-year prescriptive period provided to the plaintiffs by LSA-R.S. 9:5628 and LSA-C.C. arts. 3454, 3456, and 3492, supra (i.e., the one-year prescriptive period does not accrue until the *expiration of* the last day of the year). As the legislature could not have intended to delegate to the DOA the power to shorten the applicable one-year prescriptive period, the MMA provisions cannot be interpreted in such a way.

Accordingly, in light of the foregoing, we construe LSA-R.S. 40:1231.8(A)(2)(b) to mean that a fax-filed request for review of a medical malpractice claim is "received" by the DOA on the date when it enters the fax system designated by the DOA for receiving electronic records or information of the type sent and from which the DOA is able to retrieve the electronic record, as stated in LSA-R.S. 9:2615. The task of stamping and certifying required of the DOA by LSA-R.S. 40:1231.8(A)(2)(b) is ministerial, such that the DOA is only

16

authorized to ascertain from the facsimile machine - generated records the actual date and time that the request for review entered the DOA's fax machine system and to record that information on the face of the request.

It was undisputed in the instant consolidated cases that the plaintiffs transmitted their requests for review to the DOA's designated fax machine on the last day of the prescriptive period and that the requests were available for retrieval on the transmission dates. Because the plaintiffs' requests for review of their medical malpractice claims were received by the DOA, via the designated fax system, prior to midnight on the last day of the prescriptive period, they were received prior to the expiration of the last day of the prescriptive period, in accordance with LSA-R.S. 9:5628 and LSA-C.C. arts. 3454, 3456, and 3492, supra, and were timely filed. Therefore, the appellate court decisions erred in sustaining the defendants' peremptory exceptions pleading the objection of prescription.

### DECREE
### NO. 2015-CC-1114

In the case of **In Re: Medical Review Panel Claim of Rose Tillman**, the judgment of the appellate court is reversed and the district court judgment, denying the defendants' peremptory exceptions, pleading the objection of prescription, is reinstated; we remand the matter to the 24th Judicial District Court for the Parish of Jefferson for further proceedings.

**REVERSED; DISTRICT COURT JUDGMENT REINSTATED; REMANDED TO DISTRICT COURT.**

### DECREE
### NO. 2015-CC-1263 CONSOLIDATED WITH NO. 2015-CC-1264

In the case of **In Re: Medical Review Panel Proceedings for the Claim of Peighton Miller v. Tulane-Lakeside Hospital**, the judgment of the appellate

court is reversed and the matter is remanded to Fifth Circuit Court of Appeal, with instructions to rule on the pretermitted assignment of error.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

# SUPREME COURT OF LOUISIANA

# NO. 2015-CC-1114

# IN RE: MEDICAL REVIEW PANEL CLAIM OF ROSE TILLMAN

## CONSOLIDATED WITH

# IN RE: THE MEDICAL REVIEW PANEL CLAIM OF ROSE TILLMAN

## CONSOLIDATED WITH

# JAHMAL T. TILLMAN AND JIRUS T. TILLMAN,
ON BEHALF OF THE DECEDENT, ROSE TILLMAN VERSUS THE
STATE OF LOUISIANA, ON BEHALF OF DURGA RAM SURE, M.D.,
ET AL.

## CONSOLIDATED WITH

# NO. 2015-CC-1263

# IN RE: MEDICAL REVIEW PANEL FOR THE
CLAIM OF PEIGHTON MILLER, ET AL. VERSUS TULANE LAKESIDE
HOSPITAL, ET AL.

## CONSOLIDATED WITH

# NO. 2015-CC-1264

# IN RE: MEDICAL REVIEW PANEL FOR THE
CLAIM OF PEIGHTON MILLER, ET AL. VERSUS TULANE LAKESIDE
HOSPITAL, ET AL.

## ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON

**GUIDRY, J., concurs in the result for the reasons assigned by Justice Crichton.**

SUPREME COURT OF LOUISIANA

NO. 2015-CC-1114

IN RE: MEDICAL REVIEW PANEL CLAIM OF ROSE TILLMAN

CONSOLIDATED WITH

IN RE: THE MEDICAL REVIEW PANEL CLAIM OF ROSE TILLMAN

CONSOLIDATED WITH

JAHMAL T. TILLMAN AND JIRUS T. TILLMAN,
ON BEHALF OF THE DECEDENT, ROSE TILLMAN VERSUS THE
STATE OF LOUISIANA, ON BEHALF OF DURGA RAM SURE, M.D., ET
AL.

CONSOLIDATED WITH

NO. 2015-CC-1263

IN RE: MEDICAL REVIEW PANEL FOR THE
CLAIM OF PEIGHTON MILLER, ET AL. VERSUS TULANE LAKESIDE
HOSPITAL, ET AL.

CONSOLIDATED WITH

NO. 2015-CC-1264

IN RE: MEDICAL REVIEW PANEL FOR THE
CLAIM OF PEIGHTON MILLER, ET AL. VERSUS TULANE LAKESIDE
HOSPITAL, ET AL.

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON

CRICHTON, J., concurs in the result and assigns reasons:

I concur in the result reached by the majority in this case. However, I write separately to state that I find the plaintiff's request for a medical review panel is indeed timely, for the reasons set forth by the trial court. The trial court correctly found that then-La. R.S. 40:1299.47(A)(2) is not ambiguous, although it does not address the filing of a request via facsimile after business hours, nor does the statute provide that a fax-filed request must be filed within business hours.

Notwithstanding the statute's silence on the issue, La. C.C. art. 3456 provides that in cases where the prescriptive period consists of one or more years, "prescription accrues upon the expiration of the day of the last year that corresponds with the date of the commencement of prescription." When the plaintiffs in the *Tillman*[1] case fax-filed a request for a medical review panel with the Division of Administration prior to midnight on May 22, 2013, one year after the decedent's death on May 22, 2012, that request was timely. Any forward date-stamping by the Division of Administration, such as in this case, is contrary to the intent of the statutes at issue.

I also do not find the Louisiana Uniform Electronic Transactions Act applicable in this case, contrary to the majority's finding that a request for a medical review panel constitutes a "transaction" . . . . relating to "the conduct of . . . governmental affairs." *See,* La. R.S. 9:2602. In my view, and as simply stated above, the plaintiffs took the necessary steps in this case to suspend the running of prescription, and the trial court correctly overruled the defendants' Peremptory Exception of Prescription.

---

[1] Similarly, in the *Miller* case, the plaintiffs' request for a medical review panel was timely filed via facsimile prior to midnight on April 4, 2013, despite the Division of Administration's forward-stamping the request as received on April 5, 2013.