Judge Rosemary Ledet
This is a medical malpractice case involving both private and state health care providers. Both the Medical Malpractice Act ("MMA") (currently codified in La. R.S. 40:1231.1, et seq . ), which governs claims against private qualified health care providers, and the Medical Liability for State Services Act ("MLSSA") (currently codified in La. R.S. 40:1237.1, et seq . ), which governs claims against state health care providers, apply here.[1] This case is in the pre-suit, medical review panel stage.[2]
This case arises out of alleged malpractice in the treatment of Melissa Downing on July 13, 2014, at Interim Louisiana State University Hospital in New Orleans ("LSU Hospital"). On the night of July 11, 2014, Ms. Downing was seriously injured in a high-speed automobile accident.[3] Ms. *57 Downing was initially treated at a local hospital (former River Parish Hospital in LaPlace, Louisiana). Due to the nature of her injuries, Ms. Downing was transferred to LSU Hospital in New Orleans on the next day. On July 13, 2014, Ms. Downing sustained an anoxic brain injury, which led to her death on April 20, 2015. Ms. Downing's death certificate listed the following three causes of death: (i) respiratory failure; (ii) anoxic brain injury ; and (iii) motor vehicle accident.
On July 13, 2015, Ms. Downing's estate and four of her five surviving children (collectively "the "Downing Family") filed a request for a medical review proceeding with the Division of Administration (the "DOA"), alleging malpractice by twelve named defendants in the treatment provided to Ms. Downing on July 13, 2014, at LSU Hospital (the "Complaint"). Five of the named defendants were private health care providers covered by the MMA; five were state providers covered by the MLSSA;[4] and two were never properly identified and thus dismissed.[5]
On October 13, 2015, four of the five state providers filed in the Civil District Court for the Parish of Orleans a Petition to Institute Discovery pursuant to La. R.S. 40:1237.2(D)(4) (the "CDC Case").[6] In the fall of October 2017, before the completion of the medical review panel proceedings, three of the private health care providers-University Medical Center Management Corp. d/b/a Interim LSU Hospital ("Interim LSU"),[7] Dr. Rebecca Schroll, and Dr. Charles Clark (collectively the "Private Providers")-filed peremptory exceptions of prescription in the CDC Case.[8]
The grounds for the Private Providers' exceptions was the Downing Family's failure to comply with La. R.S. 40:1231.8(A)(1)(c), which provides:
A claimant shall have forty-five days from the date of receipt by the claimant of the confirmation of receipt of the request for review in accordance with Subparagraph (3)(a) of this Subsection to pay to the board a filing fee in the *58 amount of one hundred dollars per named defendant qualified under this Part.[9]
The penalty for failure to comply with Subparagraph (c) is set forth in La. R.S. 40:1231.8(A)(1)(e), which provides:
Failure to comply with the provisions of Subparagraph (c) or (d) of this Paragraph within the specified forty-five day time frame in Subparagraph (c) of this Paragraph shall render the request for review of a malpractice claim invalid and without effect. Such an invalid request for review of a malpractice claim shall not suspend time within which suit must be instituted in Subparagraph (2)(a) of this Subsection.
In support of their exceptions, the Private Providers argued that the Downing Family's failure to timely pay the entire filing fee they owed for invoking a medical review panel-$ 500 ($ 100 for each of the five qualified private health care providers named in the Complaint)-rendered the entire request invalid and without effect. Accordingly, they contended that the Downing Family's medical malpractice claim against them prescribed, by operation of law, on April 20, 2016, one year from the date of Ms. Downing's death.
Agreeing with the Private Providers, the trial court orally reasoned that it did not "find that the requisite fees were appropriately paid." For this reason, the trial court sustained the exceptions of prescription and ordered that the Downing Family's "proposed claim of medical malpractice ... PCF File No. 2015-00753, is DISMISSED WITH PREJUDICE and the pending medical review panel proceeding in that matter is dissolved."[10] This appeal followed.
Standard of Review
In a medical malpractice case in which the plaintiff's complaint requesting a medical review panel serves initially as the petition and serves to suspend prescription, "the health care provider can assert a prescription exception in a court of competent jurisdiction and proper venue at any time without regard to whether the medical review panel process is complete." In re Med. Review Panel for Claim of Moses , 00-2643, p. 6 (La. 5/25/01), 788 So.2d 1173, 1177 ; La. R.S. 40:1231.8(B)(2)(a).[11] Such is the procedural posture of this case. In this procedural posture, the Louisiana Supreme Court has noted that "we resolve the issue of the placement of the burden of proof based on a logical application of the general principle that the party asserting a suspension or interruption of prescription bears the burden." Id. The Supreme Court has further noted that "[s]ince the party asserting a suspension is plaintiff, logic dictates that plaintiff have the burden of proof." Id. , 00-2643, p. 6, 788 So.2d at 1178. The Downing Family, as the party asserting a suspension, has the burden of proof here.
The standard of review applied to address a trial court's judgment sustaining *59 a prescription exception "varies based on whether evidence was introduced in the trial court at the hearing on the exception." Barkerding v. Whittaker , 18-0415, p. 13 (La. App. 4 Cir. 12/28/18), 263 So.3d 1170, 1180, writ denied , 19-166 (La. 4/8/19), 267 So.3d 607, 2019 WL 1615947. "When prescription is raised by peremptory exception, with evidence being introduced at the hearing on the exception, the trial court's findings of fact on the issue of prescription are subject to the manifest error-clearly wrong standard of review." London Towne Condo. Homeowner's Ass'n v. London Towne Co. , 06-401, p. 4 (La. 10/17/06), 939 So.2d 1227, 1231 (citing Carter v. Haygood , 04-0646, p. 9 (La. 1/19/05), 892 So.2d 1261, 1267. Such is the case here.
This case, however, also presents an issue of statutory construction regarding the suspension of prescription under the MMA and the MLSSA. Statutory construction presents a question of law and, thus, is subject to a de novo standard of review. Succession of Dauterive , 18-0131, p. 4 (La. App. 4 Cir. 7/18/18), 251 So.3d 1204, 1207, writ denied , 2018-1382 (La. 11/14/18), 256 So.3d 293 (citing Benjamin v. Zeichner , 12-1763, p. 5 (La. 4/5/13), 113 So.3d 197, 201 ); Burnette v. Stalder , 00-2167, p. 5 (La. 6/29/01), 789 So.2d 573, 577 ). Simply put, legal decisions are reviewed de novo . Thibodeaux v. Donnel , 08-2436, p. 3 (La. 5/5/09), 9 So.3d 120, 122.
In sum, both the manifest error and the de novo standard apply here.
Special Prescription Rules Governing Medical Malpractice Actions
The special prescriptive period governing medical malpractice actions is set forth in La. R.S. 9:5628(A), which generally provides a prescriptive period of one year from the date of the alleged negligent treatment.[12] This case involves both wrongful death and survival action claims. Although survival action claims are governed by La. R.S. 9:5628(A), wrongful death claims are governed by the one-year period applicable to delictual actions set forth in La. C.C. art. 3492. Taylor v. Giddens , 618 So.2d 834, 842 (La. 1993). Wrongful death claims, nonetheless, "continue to be governed and procedurally controlled by the provisions of the Act [here the MMA and the MLSSA]." Taylor , 618 So.2d at 841.
Despite the one-year prescriptive period, "medical malpractice lawsuits are virtually never actually filed in courts of competent jurisdiction within one year of the alleged act of malpractice." In re Noe , 05-2275, p. 8 (La. 5/22/07), 958 So.2d 617, 622 (Calogero, C.J., concurring in part, dissenting in part). This is because "[f]iling a complaint with the review panel is a mandatory initial step in a malpractice claim and a requirement before filing suit 'in any court.' " Nathan v. Touro Infirmary , 512 So.2d 352, 353 (La. 1987). Acknowledging this initial step, the Louisiana Legislature has expressly "provided that the filing of the request for a review of a claim suspend[s] the running of prescription, ... just as the filing of a suit in a competent *60 jurisdiction suspends the running of prescription." Id. at 354.[13]
Two special suspension provisions are codified in La. R.S. 40:1231.8(A)(2)(a) of the MMA and La. R.S. 40:1237.2(A)(2)(a) of the MLSSA.[14] These statutes each contain two sentences. As former Chief Justice Calogero explained:
The first sentence ... expressly suspends the one-year prescriptive period for filing a medical malpractice action in a court of competent jurisdiction until 90 days following notification of the issuance of the medical review panel's opinion. ["Sencence One"]. The second sentence expressly suspends prescription against all joint and solidary obligors/tortfeasors "to the same extent" prescription has been suspended against one or more other joint or solidary obligors/tortfeasors when a timely request for review has been filed against that obligor/tortfeasor. ["Sentence Two"].
Noe , 05-2275, p. 9, 958 So.2d at 623.[15]
Resolution of the issue presented here requires a separate consideration of both of these provisions; hence, we divide our analysis into the following two parts: (i) Sentence One-Medical Review Proceeding Suspension;[16] and (ii) Sentence Two-Joint Tortfeasor Suspension.[17]
*61 Sentence One-Medical Review Proceeding Suspension
If a claimant perfects a request for a medical review panel against a qualified health care provider, Sentence One provides that prescription is suspended on the malpractice claim until 90 days following notification of the issuance of the medical review panel's opinion. Here, the first question is whether the Complaint qualified as a perfected request for review such that, pursuant to Sentence One, prescription was suspended. We find that it did not qualify as a perfected request.
To perfect a request for review, a claimant must pay the full filing fee of $ 100 per provider in accordance with La. R.S. 40:1231.8(A)(1)(c), which imposes a 45-day deadline. The 45-day deadline runs from the date of mailing of the confirmation of receipt of the request for review.[18] If, within 45 days after the Patient Compensation Fund (the "PCF") sends a confirmation of receipt, the claimant fails to pay the full filing fee, La. R.S. 40:1231.8(A)(1)(e) provides the penalty, which is that the request for review is invalid and without effect.
Both the filing of the request for review and the payment of the filing fee are "inexorably joined"; hence, the request for review is not considered to be filed until the claimant pays the filing fee. Med. Review Panel of Davis v. Louisiana State Univ. Health Sciences Ctr.-Shreveport , 41,273, p. 6 (La. App. 2 Cir. 8/25/06), 939 So.2d 539, 543. Again, the penalty for failing to pay the full filing fee is that the request for review is considered invalid and without effect. La. R.S. 40:1231.8(A)(1)(e). "Because such an invalid request does not suspend the time within which suit must be instituted, a subsequent request, filed beyond the one-year period for filing a medical malpractice claim, [will] not [be] timely." In re Smithson , 07-2262, pp. 7-8 (La. App. 1 Cir. 6/6/08), 991 So.2d 1075, 1080.[19]
*62 Under both the MMA and the MLSSA, a request for a medical review panel is initiated in the same manner-the claimant files a request for review of the claim by a medical review panel with the DOA. Smithson , 07-2262, p. 5, 991 So.2d at 1078. When, as here, a joint request for both a state and a private panel is made, the DOA's general procedure is to retain a copy of the request and forward the original to the PCF. Smithson , 07-2262, p. 8, 991 So.2d at 1080. Thereafter, the DOA sends a notification letter regarding the state defendants, which includes a request for payment of the applicable filing fee within 45 days. Id. The PCF Board sends a similar notification letter regarding the private defendants, which includes a request for payment of the applicable filing fee within 45 days. Id. These events occurred here.[20]
The record reflects that both the DOA and the PCF sent notifications letters to the Downing Family, through their attorney, which included requests for payment of the filing fee to the respective administrative agency within a 45-day period. The applicable filing fees were $ 500 due the PCF and $ 500 due the DOA (or the commissioner of administration (the "Commissioner")).[21] Stated otherwise, the chain of correspondence in the record between the administrative agencies and the Downing Family's attorney reflects that, for purposes of collecting the filing fees, this case was administered as a bifurcated proceeding-the PCF as to the private defendants (PCF No. 2015-00753); the *63 DOA as to the state defendants (15 MR 003).
To provide the necessary framework for analyzing the prescription issue presented here, we summarize, in chronological order, the chain of correspondence between the agencies and the Downing Family, through their attorney.
On July 23, 2015, the PCF acknowledged receipt of the Complaint and assigned the case a number, PCF No. 2015-00753. In its acknowledgement letter, the PCF provided the following breakdown of the twelve named defendants: three private providers qualified under the MMA-the Private Providers; two providers pending verification as to whether they were qualified under the MMA-Brenda Laws and Devin Johnson; five providers not qualified under the MMA, but qualified under the MLSSA-the State Providers; and two providers for whom incomplete names were given.[22] Finally, the PCF acknowledged receipt of the Downing Family's check for $ 100[23] and admonished the Downing Family as follows:
In accordance with R.S. 40:1299.47(A)(1)(c) [now 40:1231.8(A)(1)(c) ] a filing fee of $ 100 per qualified defendant must be received by the Patient's Compensation Fund within 45 days of the postmark of this notice without exception. Please remit full payment to the Patient's Compensation Fund in the amount of $ 200 (balance due). This filing fee may only be waived upon receipt of an affidavit from a physician or a district court's in forma pauperis ruling as set forth in R.S. 40:1299.47(A)(1)(d) [now 40:1231.8(A)(1)(d) ]. Failure to comply shall render the request invalid and without effect and the request shall not suspend the time within which suit must be instituted.
On August 4, 2015, the PCF advised the Downing Family that the two providers pending verification-Ms. Laws and Mr. Johnson-were both qualified private providers. The PCF further advised that a $ 100 filing fee for each of these two qualified private providers must be received by the PCF within 45 days of the postmark of the notice without exception and stated "[p]lease remit full payment to the [PCF] in the amount of $ 200." At this point, the Downing Family owed a total of $ 400 in filing fees to the PCF-$ 100 for each of the five private qualified private providers, as reflected in the PCF's July 23, 2015, and August 4, 2015 letters, less the $ 100 tendered with the Complaint.
On August 29, 2015, the Downing Family, through their attorney, sent a check to the PCF in the amount of $ 200. The Downing Family's attorney stated in her August 29, 2015 cover letter to the PCF that "[a]lso included is a copy of a check that is being submitted to the Division of Administration for $ 500 in accordance with their attached letter dated July 17, 2015 and directing that the check be submitted to the Division of Administration."
On September 1, 2015, the DOA acknowledged receipt of the $ 500 check; the DOA's acknowledgement letter indicated that the claim against the state defendants *64 was assigned Medical Review Panel Number 15 MR 003.[24]
On September 9, 2015, the PCF acknowledged receipt of a check in the amount of $ 200 from the Downing Family. Thereafter, the Downing Family submitted another check to the PCF for $ 200; however, the PCF did not receive this other check until September 28, 2015, which was after the 45-day period had elapsed (the deadline was September 18, 2015).
On October 1, 2015, the PCF notified the Downing Family that "although money was remitted, a refund is being processed because the balance due [was] received untimely.[25] Therefore the above cited case [PCF 2015-00753] is considered invalid and without effect as to Brenda P. Laws and Devin Johnson."
In response to the October 1, 2015 notice, the Downing Family's attorney sent a letter to the PCF, dated October 15, 2015, in which she stated that she was charged twice for one of the providers, Dr. Schroll. She further stated the following:
[T]here are only 8 qualified medical providers and $ 800 was submitted before the additional $ 200.00 payment was received on September 28, 2015. I have been receiving requests for payment from both the Commissioner of Administration and the Patient Compensation Fund and submitting requests for payment to both.... $ 1,000 has been paid. I am owed a reimbursement of the additional $ 200.00 because $ 1,000.00 has been paid and only $ 800.00 is due.
This response is inconsistent with the record, which reflects that there were a total of ten qualified providers named in the Complaint-five private providers and five state providers-and that a total of $ 1,000 was due-$ 500 to each of the respective agencies, the PCF and the DOA.
Likewise, the Downing Family's argument on appeal that they were overcharged for Dr. Schroll is not supported by the record. The Downing Family presented no evidence that they paid the DOA for Dr. Schroll. Indeed, Dr. Schroll was listed on the initial letter from the PCF as a qualified private provider. Regardless, any payments made to the DOA are not relevant on the issue of whether the full filing fee due the PCF was paid. The DOA and the PCF are separate administrative bodies; each administrative body separately collected the respective filings fees.
The Downing Family further contends that the PCF's October 1, 2015 letter stating that the Complaint was only invalid as to two providers-Ms. Laws and Mr. Johnson-supports their position that suspension of prescription is achieved on an individual-defendant basis. Put differently, their position is that the failure to pay the filing fee for one or more providers does not invalidate the entire request and that suspension of prescription should be achieved on an individual-defendant basis when the fee for a particular defendant is paid.
The Private Providers counter that the PCF's statement that the invalidity of the request pertained only to two of the five private defendants is neither judicially *65 binding nor legally correct. Rather, they contend that a failure to pay the fee as to all qualified defendants renders the request for a medical review panel invalid and without effect as to all qualified defendants, even when timely payment was received as to some qualified defendants. Thus, they contend that the invalidity extends to the Downing Family's entire request, which included five private defendants. The Private Providers further contend that the PCF lacks the authority to allocate a filing fee among the named private defendants and that a partial filing fee is not allowed.
According to the Private Providers, resolution of the issue presented here-whether the Downing Family's medical malpractice claim against them is prescribed-is simple:
• The Downing Family's request for formation of a medical review panel named five qualified private defendants, resulting in them owing the PCF a filing fee of $ 500;
• The Downing Family only remitted $ 300 within the prescribed 45-day period;
• The Downing Family's failure to timely remit the full filing fee rendered their request for formation of a medical review panel invalid and without effect per statute; thus,
• The Downing Family's request did not suspend the time within which to institute suit.
The jurisprudence, as the Private Providers contend, has construed the statutory provision to mean that that if a claimant fails to pay the "full filing fee" within the applicable 45-day period to the appropriate administrative agency, the entire request for review panel is invalid and without effect as to all the providers. Rideaux, 2013 WL 811628, *2. The PCF, as the Private Providers further contend, lacks the authority to designate the particular providers to whom a partial fee applies; rather, the PCF's duties are ministerial and clerical. See In re Elliott , 06-1440, p. 10, n. 4 (La. App. 3 Cir. 4/9/08), 980 So.2d 881, 887 (observing that "[t]he DOA and the PCF stand by analogy as the clerk of court of the judicial district"). Because here the Complaint named five private defendants and only $ 300 was paid to the PCF, the trial court was not manifestly erroneous in finding that the Complaint, insofar as the Private Providers are concerned, was invalid and without effect and did not suspend prescription under Sentence One.
Our finding that Sentence One is inapposite to suspend prescription as to the Private Providers, however, does not end our analysis. The separate issue of whether the Downing Family's proposed claim of medical malpractice against the Private Providers is prescribed requires an analysis of Sentence Two-joint tortfeasors suspension.
Sentence Two-Joint Tortfeasors Suspension
Sentence Two comes into play when, as here, there are multiple tortfeasors. See Maestri v. Pazos , 15-9, p. 1 (La. App. 5 Cir. 5/28/15), 171 So.3d 369, 374 (Liljeberg, J., dissenting) (observing that "this matter involves joint tortfeasors, which requires the application of the second sentence [of the statute]"); see also Smithson , supra . Construing the language of Sentence Two, the Louisiana Supreme Court has observed as follow:
The second sentence of La. R.S. 40:1299.47(A)(2)(a) [now La. R.S. 40:1231.8(A)(2)(a) ] ... gives guidance in the situation where there are claims against multiple tortfeasors, for which there may be different time limitations for filing suit. Where suit is filed against *66 alleged joint and solidary obligors, or joint tortfeasors, the legislature indicates its preference in this second sentence for the same time limitation to be applied to all of the defendants. In that situation, the legislature provides that the filing of a request for review of a malpractice claim against the health care provider, qualified or not qualified, shall suspend the running of prescription for filing suit "to the same extent that prescription is suspended against the party or parties that are the subject of the request for review." This legislation produces the imminently practical result that allegations of joint or concurrent negligence may be determined at the same time.
Milbert v. Answering Bureau, Inc. , 13-0022 (La. 6/28/13), 120 So.3d 678, 685-86.
The applicability of Sentence Two to suspend prescription in the context of a joint request for a medical review panel similar to this one-when the private panel request was not perfected due to the failure to timely pay the filing fee, but the state panel request was timely perfected-was addressed in Smithson , supra .[26]
In Smithson , the claimant filed a request for a medical review panel naming three private defendants and two state defendants. Although the claimant timely paid the filing fees for the two state defendants, the claimant failed to pay the $ 300 fee for the three private defendants. As a result, the PCF notified the claimant that his request as to the private defendants was invalid and without effect. Thereafter, the claimant filed a supplemental and amending request, reasserting his claims against the private defendants and paying the filing fee associated with that request.
In response, the private defendants each filed an exception of prescription. They contended that the claimant's initial request for a medical review panel to review the claims against them was rendered invalid and without effect and did not suspend the time within which suit must be instituted, because the claimant failed to pay the $ 300 filing fee or to provide evidence that it should be waived within the applicable 45-day period. They further contended that even though the claimant paid the filing fee with his supplemental and amending request, this request was not timely because it was filed over a year from the date of the alleged malpractice. Agreeing with the private defendants, the trial court granted the exceptions.
Reversing, the appellate court in Smithson first noted that "[t]his court and others have recently reviewed a number of cases involving the exception of prescription based on a medical malpractice claimant's failure to submit filing fees or evidence of waiver thereof within 45 days from the confirmation of receipt of the request for review." Smithson , 07-2262, p. 7, 991 So.2d at 1080 (collecting cases). The line of cases, the appellate court noted, would dictate a finding that the claimant's claim against the private defendants was prescribed if the facts were the same as in those cases. The appellate court, however, found the facts before it distinguishable, emphasizing that "[the claimant's] case has an additional factual circumstance, in that his request for review included claims against both state defendants and private *67 defendants"-a joint request. Smithson , 07-2262, p. 8, 991 So.2d at 1080.
Construing Sentence Two as applicable to suspend prescription, the appellate court in Smithson reasoned as follows:
The statute is clear and unambiguous. According to LSA-R.S. 40:1299.39.1(A)(2)(a) [now La. R.S. 40:1237.2(A)(2)(a) ], the filing of a request for review of a claim against a state health care provider "shall suspend the running of prescription against all joint or solidary obligors , ... to the same extent that prescription is suspended against the party or parties that are [the] subject of the request for review." (Emphasis added).... At this stage of the proceedings, it seems unlikely that the allegations would result in a finding of solidary liability among the state and private defendants. However, Smithson claims that his damages resulting from the loss of his eye were caused by two or more persons, including state and private defendants. Therefore, joint liability has clearly been alleged. This triggers the suspension of the running of prescription against all joint obligors, as set forth in LSA-R.S. 40:1299.39.1(A)(2)(a). Accordingly, Smithson's filing of a request for review against the state defendants suspended the running of prescription against the private defendants, unless that filing was deemed invalid and without effect. The evidence shows that the filing against the state defendants was valid, because the filing fee for that claim was paid timely. Therefore, Smithson's claims against the private defendants were not prescribed.
Smithson , 07-2262, pp. 8-9, 991 So.2d at 1080-81 (internal footnote omitted).[27]
The Downing Family contends that this court should follow the holding in Smithson . The Private Providers counter that this court should find Smithson factually distinguishable and legally incorrect. Factually, the Private Providers point out that the claimant in Smithson filed a supplemental and amending request against the private defendants; whereas, the Downing Family failed to file a supplemental and amending request against the private defendants. This distinction, however, is not significant. The issue here is a legal one of statutory construction. Simply stated, the issue is whether a supplemental and amending request, if filed (as it was in Smithson ), would be considered timely by virtue of applying Sentence Two-joint tortfeasor suspension-in this context.
Legally, the Private Providers contend that Smithson erroneously holds that a request for review against state providers under the MLSSA suspends prescription against private providers under the MMA despite the claimant's failure to pay the required filling fee to perfect that request. They emphasize that the statute provides that the filing of a "claim"-a complaint before a medical review panel-suspends the prescriptive period for filing a "suit"-a petition in a trial court. See Nash v. Brown , 04-751, p. 4 (La. App. 3 Cir. 3/16/05), 898 So.2d 619, 622 (emphasis supplied) (observing that "a medical review panel must review the claim before suit is commenced"). The Private Providers contend that Smithson , by failing to respect this distinction, erroneously eviscerates the filing fee requirement for suspending prescription.
The Private Providers' construction of the statute as precluding the application of Sentence Two-joint tortfeasor suspension-in this context to extend the time to file (or to re-file) a "claim" before a medical *68 review panel would result in a finding that the Downing Family's claims against them are prescribed. The contrary construction of the statute, as in Smithson , would preserve the Downing Family's claims, assuming the Private Providers are joint tortfeasors with the State Providers.
Adopting the construction in Smithson is consistent with the well-settled rule that a prescription statute "is strictly construed against prescription and in favor of the obligation sought to be extinguished by it." Wimberly v. Gatch , 635 So.2d 206, 211 (La. 1994) (collecting cases); In re Med. Review Panel Proceedings of Glover , 17-201, p. 8 (La. App. 5 Cir. 10/25/17), 229 So.3d 655, 662 (reasoning that "[b]ecause there are two possible interpretations, we must adopt the one which favors maintaining the action as opposed to barring it"). Stated otherwise, "[s]tatutes providing for prescriptive periods are to be strictly construed in favor of maintaining a cause of action." David v. Our Lady of the Lake Hosp., Inc. , 02-2675, p. 12 (La. 7/2/03), 849 So.2d 38, 47 (citing Lima v. Schmidt , 595 So.2d 624, 629 (La. 1992) ). For these reasons, we adopt the construction of the statute set forth in Smithson .
Pursuant to Sentence Two, as construed in Smithson , the Downing Family's timely perfecting of a request for a medical review panel as to the State Providers suspended prescription as to all joint tortfeasors.[28] The prescription issue here turns on whether the Private Providers are joint tortfeasors with the State Providers.[29] The Downing Family's Complaint alleges that all of the named defendants-the State Providers and the Private Providers-are joint tortfeasors who treated Ms. Downing on July 13, 2014.
When a peremptory exception is pleaded before trial, evidence is admissible to support or to controvert the exception. La. C.C.P. art. 931. "[I]n the absence of evidence, an objection of prescription must be decided upon the facts alleged in the petition with all allegations accepted as true." Duckworth v. Louisiana Farm Bureau Mut. Ins. Co. , 11-2835, p. 26 (La. 11/2/12), 125 So.3d 1057, 1072. Evidence was introduced at the hearing on the exception of prescription, albeit not on the issue of joint tortfeasor suspension. The absence of evidence on this issue is attributable to Downing Family's failure to raise this issue in the trial court.
Because joint tortfeasor suspension under Sentence Two was not raised in the trial court, the issue of whether the Private Providers are joint tortfeasors with the State Providers was not resolved.
*69 When, as here, the issue of joint liability is unresolved, the granting of an exception of prescription is premature. See Correro v. Caldwell , 49,778, p. 10 (La. App. 2 Cir. 6/3/15), 166 So.3d 442, 447-48 (citing Etienne v. National Auto. Ins. Co. , 99-2610 (La. 4/25/00), 759 So.2d 51 ).
Ordinarily, a trial court has discretion to refer an exception of prescription to the merits. See La. C.C.P. art. 929(B) (providing that "[i]f the peremptory exception has been filed after the answer, but at or prior to the trial of the case, it shall be tried and disposed of either in advance of or on the trial of the case"). When, however, a medical provider invokes La. R.S. 40:1231.8(B)(2)(a) to file a peremptory exception of prescription in the pre-petition context of a pending panel proceeding, it is inappropriate for the trial court to refer the exception to the merits. In re Med. Review Panel for Claim of Dede , 98-0830 (La. App. 4 Cir. 5/20/98), 713 So.2d 794. In that context, "a ruling on an exception of prescription should occur prior to the completion of the medical review panel since the exception, if meritorious, would dissolve the medical review panel." Id. , 98-0830, p. 2 (La. App. 4 Cir. 5/20/98), 713 So.2d at 796. In order to resolve the issue of joint tortfeasor suspension presented here, we find it appropriate, as suggested by one of the Private Providers, to remand the prescription exception to the trial court for an evidentiary hearing.[30]
DECREE
For the foregoing reasons, the trial court's judgment granting the Private Providers' peremptory exception of prescription and dissolving the pending medical review panel is reversed; this matter is remanded.
REVERSED AND REMANDED.

Because no substantive changes have been made to any sections of the MMA and the MLSSA relevant here, we refer in this opinion to the currently codified versions of the MMA and MLSSA. See Skinner-Smith v. Sec'y of Health & Human Servs. , 141 Fed.Cl. 348, 351, n. 2 (2018) (citing In re Tillman , 15-1114, p. 1, n. 1 (La. 3/15/16), 187 So.3d 445, 446 ); and Matranga v. Parish Anesthesia of Jefferson, LLC , 17-73, pp. 8-9 (La. App. 5 Cir. 8/29/18), 254 So.3d 1238, 1244-45 ) (observing that "[b]ecause no substantive changes have been made to sections of the MMA relevant to the above-captioned case, this court refers to the currently codified MMA").

Given the procedural posture of this case, we accept as true (for purposes of this appeal only) the statement of the facts in the request for review filed by the Downing Family.

Her injuries from the accident included a closed liver laceration, an adrenal gland laceration, a leg laceration, and multiple rib fractures.

The five defendants covered under the MLSSA were Jennifer Mooney; Blair Barton; Willard Mosler, Jr.; Allen Marr; and Samuel Victoria, Jr. (collectively the "State Providers").

These two providers were listed as "R. Tanner" and "Dr. Tieman." Although the PCF requested that the full names of these two providers be provided within 45 days, these two providers were not properly identified. Thus, they were dismissed.

After a request for a medical review panel is filed, the parties may request that the clerk of the district court assign a docket number to a contemplated medical malpractice proceeding in order to conduct discovery. See La. R.S. 40:1237.2(D)(4) (providing that "[u]pon request of any party, or upon request of any two panel members, the clerk of any district court shall issue subpoenas and subpoenas duces tecum in aid of the taking of depositions and the production of documentary evidence for inspection or copying or both"). According to the petition filed to institute the CDC Case, it was filed by "the State of Louisiana, through the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, on behalf of LSU Health Sciences Center, Jennifer Mooney, M.D., Willard Warren Mosier, Jr., M.D., Alan Bland Marr, M.D., and Samuel E, Victoria, Jr., M.D." The State Provider not listed in the petition is Dr. Barton.

According to the parties, Interim LSU was privatized in June 2013, which was before the dates of alleged malpractice.

See La. R.S. 40:1231.8(B)(2)(a) (providing that "[a] health care provider, against whom a claim has been filed under the provisions of this Part, may raise ... any exception or defenses available pursuant to R.S. 9:5628 in a court of competent jurisdiction and proper venue at any time without need for completion of the review process by the medical review panel").

Although the statute provides for a waiver of the filing fee in certain situations, it is undisputed that none of those exceptions applies here.

See La. R.S. 40:1231.8(B)(2)(b) (providing that "[i]f the court finds that the claim had prescribed or otherwise was perempted prior to being filed, the panel, if established, shall be dissolved upon the judgment becoming final").

Ordinarily, the party pleading prescription bears the burden of proof at the trial of the peremptory exception. Rando v. Anco Insulations, Inc. , 08-1163, 08-1169, p. 20 (La. 5/22/99), 16 So.3d 1065, 1082 (citing Carter v. Haygood , 04-0646, p. 9 (La. 1/19/05), 892 So.2d 1261, 1267 ). But, "[i]f prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show the action has not prescribed." Id.

La. R.S. 9:5628(A) provides as follows:
No action for damages for injury or death against any physician, ... nurse, [or] ... hospital ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

See also Tillman , 15-1114, p. 8, 187 So.3d at 450 (observing that "the legislature, in enacting the MMA, took special cognizance of the need to fully protect plaintiffs from the detrimental effect of liberative prescription, allowing for suspension of the time within which suit must be filed during the pendency of the review process and for ninety days following notification to the claimant or his or her attorney of the panel opinion"); Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 21.03[7] (2d ed. 2018) (observing that "[s]pecial provisions accommodate the need for pre-suit screening of a claim against a [qualified health care provider]").

The provisions of these two special suspension statutes are virtually verbatim. For ease of discussion, we refer to the provision in the MMA.

See also Ferrara v. Starmed Staffing, LP , 10-0589, p. 3 (La. App. 4 Cir. 10/6/10), 50 So.3d 861, 864 (citing LeBreton v. Rabito , 97-2221, p. 9 (La. 7/8/98), 714 So.2d 1226, 1230 ) (observing that "the filing of a medical malpractice claim with a medical review panel triggers the suspension of prescription specially provided by the MMA, rather than the interruption of the liberative prescriptive period generally provided in the Civil Code").

The first sentence provides as follows:
The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part.
La. R.S. 40:1231.8(A)(2)(a).

The second sentence provides as follows:
The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review.
La. R.S. 40:1231.8(A)(2)(a). This statute contains a third sentence that is not pertinent here; the third sentence provides as follows: "[f]iling a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription. All requests for review of a malpractice claim identifying additional health care providers shall also be filed with the division of administration." Id.

Summarizing the PCF's duties regarding issuing a confirmation of receipt, the court in Brown v. Patient Comp. Fund Oversight Bd ., 17-0318, pp. 7-8 (La. App. 1 Cir. 1/5/18), 241 So.3d 1167, 1173, observed:
Louisiana Revised Statute 40:1299.47(A) [now La. R.S. 40:1231.8(A)(3)(a)-(c) ] outlines the PCF's affirmative and mandatory ministerial duties regarding notification after it receives a request for review. The clear and unambiguous statutory language imposes on the PCF the following ministerial duties owed to the claimant regarding requests for review: (1) within fifteen days of receipt, the PCF shall send notification to the claimant by certified mail, return receipt requested, confirming receipt of the claim and the qualifications of the health care providers; (2) in the confirmation, the PCF shall also give notice of the amount of the filing fee due to the PCF and the time frame within which the fee is due to the PCF and notifying the claimant that failure to timely pay the filing fee due will render the request for review "invalid and without effect"; (3) in the event that the notification by certified mail, return receipt requested is not claimed or is returned undeliverable, the PCF shall provide the statutorily required notification by regular first class mail, which date of mailing shall have the effect of receipt of notice by certified mail; and (4) notify all parties when the required filing fee is received by the PCF and whether the claimant has timely or not timely paid the required filing fee.

See also In re Ouder , 07-1266, p. 12 (La. App. 1 Cir. 5/2/08), 991 So.2d 58, 66 (observing that "[t]he statute could not be more clear: failure to pay the filing fees within the allotted time period shall render the request for review of a malpractice claim invalid and without effect, and such an invalid request shall not suspend the time within which suit must be instituted"); In re Latiolais , 09-1186, p. 4 (La. App. 3 Cir. 3/24/10), 33 So.3d 455, 458 (observing that "[n]o ambiguity can be found in this statute" imposing a 45-day requirement to pay the filing fee); In re Rideaux , 12-1096 (La. App. 3 Cir. 3/6/13), 110 So.3d 292 (unpub .), 2013 WL 811628 (observing that "[d]espite the clear and unequivocal notice, Rideaux failed to pay the filing fee prior to the deadline"); see also Smart v. W. Jefferson Med. Ctr ., 09-366, p. 10 (La. App. 5 Cir. 11/24/09), 28 So.3d 1119, 1125 (observing that the Legislature instituted the filing fee requirement to serve two purposes: (i) to offset the escalating costs of processing panel requests and (ii) to encourage claimants to seriously review the matter before naming a healthcare provider).

When, as here, a joint request for both a state and a private panel is made, both the MMA and the MLSSA provide that a joint medical review panel shall be convened unless the parties agree otherwise. See La. R.S. 40:1231.10 (the MMA); La. R.S. 40:1237.3 (the MLSSA). A joint panel is thus the default process that results when, as here, there is no agreement to the contrary. This case, however, never reached the joint panel stage. Instead, the PCF sent out a notification that the panel request was invalid and without effect; and the Private Providers each filed the peremptory exceptions of prescription at issue here.
Nonetheless, we note that the record on appeal contains two references to the consolidation of the panel requests. First, in the State Providers' petition in the CDC Case, which was filed on October 13, 2015, the State Providers averred: "[a] Medical Review Panel proceeding was instituted against movers herein pursuant to LSA-R.S. 40:1237.1, et seq ., and is pending with the Division of Administration in the matter of 15 MR 003, consolidated with PCF 2015-00753." Second, in the State Providers' motion to extend the medical review panel filed in the CDC Case, they made the same averment. The only other mention of a joint panel in the record an oral statement by the Downing Family's attorney at the hearing on the exceptions; their attorney argued that, given the statutory requirement of a joint panel, the "payments made to both the DOA and PCF should be considered together" and that, collectively, $ 800 in filing fees was paid. As discussed elsewhere in this opinion, the Downing Family attorney's suggestion that the filing fees paid to the DOA should be considered in determining whether the full filing fee was paid to the PCF is unpersuasive.

For ease of discussion, reference to the agency administering the claims against the state defendants is made to the DOA. By statute, however, claims against state providers under the MLSSA are administered by the Commissioner. See La. R.S. 40:1237.2(A)(1)(a) (providing that claims against the state defendants "shall be reviewed by a state medical review panel established as provided in this Section, to be administered by the commissioner of administration, hereinafter referred to as commissioner").

As to these two providers, the letter advised that "[f]ailure to submit the requested information within 45 days of the postmark of this notice shall render the panel request as to R. Tanner and Dr. Tieman invalid." As noted elsewhere in this opinion, the two providers as to whom incomplete names were given have been dismissed.

The Downing Family included with the Complaint a check in the amount of $ 100 for the filing fee and indicated that "[a]ny additional filing fee will be forwarded upon notice of qualified defendants."

The September 1, 2015 letter was from the Commissioner and written on DOA letterhead.

See La. R.S. 40:1231.8(A)(6) (providing that "[i]n the event the board receives a filing fee that was not timely paid pursuant to Subparagraph (1)(c) of this Subsection, then the board shall return, or refund the amount of, the filing fee to the claimant within thirty days of the date the board receives the untimely filing fee").

See also Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 21.03[7] (2d ed. 2018) (citing Smithson , supra , for the proposition that when "the state provider and the private medical provider are joint obligors the timely filing [of a request for review] against the state medical provider, which is valid because the filing fee is timely paid, suspends the running of prescription against the private medical provider").

This court issued an order that the parties brief the issue of the impact, if any, on the prescription issue presented in this case of the holding in Smithson, supra .

Contrary to the Private Providers' suggestion, Smithson did not hold that a claimant, in this context, is relieved of his or her obligation actually to pay the filing fee for the private defendants. The claimant in Smithson , as the Private Providers acknowledge, filed a supplemental and amended request and paid the filing fee for the private defendants. Indeed, the legislature requires a filing fee be paid, absent a waiver, for each qualified defendant. See La. R.S. 40:1231.8(A)(1)(g) (providing that "[t]he filing fee of one hundred dollars per named defendant qualified under this Part shall be applicable in the event that a claimant identifies additional qualified health care providers as defendants").

" 'A joint tortfeasor is one whose conduct (whether intentional or negligent) combines with the conduct of another so as to cause injury to a third party.' " Milbert v. Answering Bureau, Inc. , 13-0022 (La. 6/28/13), 120 So.3d 678, 688 (quoting Greer v. Johnson , 37,655 p. 5 (La. App. 2 Cir. 9/24/03), 855 So.2d 898, 901 ). "The term 'joint tortfeasor' may be applied both to the situation where two or more persons are acting together in concert, or where '[t]he negligence of concurrent tortfeasors ... occurs or coalesces contemporaneously,' to produce an injury." Id. (footnote omitted).

Given our resolution of this appeal on other grounds, we pretermit the Downing Family's arguments regarding the application of contra non valentem .